## JENNISONS *v.* LEONARD.

1. When, under the act of March 3d, 1865, authorizing the parties to submit their case to the court for trial without the intervention of a jury, there have been no exceptions to rulings in the course of the trial and the court has found the facts specially and given judgment on them, the only question which this court can pass upon, is the sufficiency of the facts found to support the judgment. Any propositions of law stated by the court as having been held by it in entering its judgment, are not open to exception.

2. Where A. agreed to sell timber lands to B. (the chief or only value of the lands being their timber), for a large sum, payable in three annual instalments, B. agreeing to cut not less than so much timber a year, the value of which timber when cut, it was supposed, would be about enough to pay the said purchase-money, and to make monthly payments at the rate of a certain sum for each thousand feet cut, with an agreement that if in any year the monthly payments on the basis of the timber cut, taken together, fell short of the annual instalment due, B. would make up the deficiency, with the further agreement that B. should have possession, use, and enjoyment of the lands from the date of the agreement to sell, and should pay all taxes so long as he should continue in possession of them for the purposes of the agreement, and that A., on B.'s making full payment with interest in the manner specified, would convey to him the lands in fee,—in such case it must be assumed that the

parties intended that the payments were to be kept up in the ratio of the cutting, and that the vendor reserved a right of entry in case of a failure to pay; and time must be regarded as of the essence of the contract.

3. Where, in such a case, B. being indebted to C. for advances, mortgaged to him so many feet of timber *then cut* on the land, and the mortgage not being paid, C., agreeing with A. to operate under B.'s contract with A., and—a dispute arising between A. and C. as to the amount due by B. to A.—C. abandons the land, and A. enters into peaceable possession, takes the timber at that time there, and not removed (which the evidence did not prove was the timber mortgaged), and has it sawed into boards, it is to be regarded as A.'s, and not in any sense as C.'s; and if C. take and convert it to his own use, assumpsit will lie against him for its value.

ERROR to the Circuit Court for the Western District of Michigan; the case being thus:

Leonard owning certain timber lands in Michigan, agreed on the 1st of September, 1865, with one Cole, who was engaged in the lumber business and meant to cut the timber from them, to sell the lands to him for $27,000, payable, with interest, in three yearly payments; $10,000 in the first and second years, each, and $7000 in the third and last. The manner in which the said yearly payments were to be made was thus: Cole was to cut not less than three million feet of logs in each of the three years, and to pay Leonard, monthly, for every thousand feet cut and removed from the lands, the sum of $3; it being provided and agreed that in case the said monthly payments should fall short of the yearly payments agreed on as just mentioned, Cole was to make up the deficiency. It was agreed that Cole should have possession of the lands "hereby contracted to be sold" from and after the date of the contract, and the use and enjoyment of them and pay all taxes on them, so long as he should continue in possession of them for the purposes of the agreement; and that Leonard, receiving full payment of the $27,000, with interest, in the manner specified, and on Cole's performance of all his covenants, should execute and deliver to Cole, or to his assigns, good and sufficient deeds of conveyance of the lands, thereby contracted to be sold, free from incumbrance and with warranty.

Cole, at the same time and by the same instrument, agreed to assign, on the execution of it to Leonard & Co., certain swamp lands in Ottawa Harbor.

Prior to June 11th, 1867, Cole executed to L. & H. Jennison a bill of sale of a million of feet of the logs cut on the premises, and three chattel mortgages upon the same, to secure them for advances made to him. The Jennisons not being paid the amounts secured by their mortgages, entered on the lands in question early in July, 1867, and took possession of the timber cut by Cole, and not theretofore removed, and began to remove the same. On the 20th of that month they entered into an agreement, by which they recognized the interest of Leonard in the property, and undertook to pay what was due on the contract to Leonard, and what should become due so long as they "operated under said chattel mortgage."

A dispute soon arose as to the amount thus due, and on the 4th of September, 1867, the Jennisons refused further to "operate" on the land, but abandoned the land, and had not since removed any timber therefrom.

Leonard then, September 12th, 1867, entered into possession of the lands for the alleged breach of contract by the non-payment of $5280 then due and unpaid on the contract of Cole, and took possession of all the "down timber" not removed, amounting to one million one hundred and twenty-two thousand feet, board measure. At an expense of $5369 this timber was transported by Leonard to a mill near the mouth of the Grand River, sawed into lumber, and placed on vessels for the Chicago market, without interference with his possession, removal, or manufacture by any one. While thus on the vessels, and about to be sent to Chicago, the Jennisons seized the lumber, then worth $13,464, and sold and converted it to their own use, asserting that the logs from which it was manufactured were theirs, by virtue of the mortgages to them from Cole, hereinbefore described.

For this taking Leonard sued them in assumpsit, in the court below.

The case was submitted to the court for trial without the

intervention of a jury, under the act of March 3d, 1865, which allows exceptions to the rulings of the court in the progress of the trial, and, where the finding of the facts is special, as under the act it may be, allows this court to determine "the sufficiency of the facts found to support the judgment."

The court found the case as above set forth, and upon it held the law to be—

"That the contract of September 1st, 1866, was an executory agreement 'to sell;' that no title passed by virtue thereof, to Cole or his assignee, to any portion of the land or timber described therein; that the stipulation therein contained in reference to monthly payments for timber to be cut and removed, operated as a license to Cole or his assignees to cut and remove annually three million feet or more, so long as Cole suffered no breach of his agreements to pay; but that when a breach occurred, and entry by the plaintiff in consequence, such license was suspended, and could be restored only by waiver on the part of the plaintiff, or by paying whatever was in arrears.

"That no title passed to Cole or his assignees to any timber cut and not removed at the time of breach and entry by plaintiff.

"That the plaintiff's entry, September 12th, 1867, for breach, occasioned by non-payment under the Cole contract, being continued and tacitly acquiesced in by Cole's assignees, restored to the plaintiff both possession and right of property in lands and timber, and that the seizure subsequently by the defendants of the lumber produced from such timber, rendered them liable to the plaintiff in this form of action for the value thereof at the place of seizure, with interest from the date of conversion."

The court accordingly rendered a judgment in $17,133 for the plaintiff. The defendant now brought the case here.

There were no exceptions to the rulings of the court in the progress of the trial.

*Messrs. M. J. Smiley and D. D. Hughes, for the plaintiff in error:*

1. The court erred in holding that the entry made by the plaintiff on the 12th of September, 1867, worked a forfeiture or rescission of the contract with Cole for the sale of the land and timber.

This entry, of course, was made on account of the failure of Cole to pay the balance of the $10,000, which matured on the 1st of September, 1867. Such failure did not authorize the plaintiff to rescind the contract unless, in the Cole contract, time was of the essence of the contract under all the circumstances of the case.

Now, whether in an agreement of this sort, time is of essence, is a question of intention of the parties as expressed in the contract.* Manifestly here it was not, for the following reasons:

There is no proviso for re-entry for breach, and no agreements that a failure to pay shall put an end to the contract.

Payment is made a condition precedent to a conveyance, but not to possession, or to cutting and removing.

The plaintiff took the Ottawa lands as collateral security for performance by Cole, showing a clear intention that no right of rescission remained.

The contract, in truth, made a demise for three years in which the nine million feet of timber were to be cut and removed. The agreement is to cut and remove three million a year, for three years, and that Cole should *have possession of the lands, from and after the date of the contract,* and *have the use and enjoyment of them, and pay taxes. on them.* We have then the case of a demise for three years, or until nine million are cut, without any proviso for re-entry. Without such proviso no re-entry can be made.†

2. If the contract made a lease, then Cole and the Jennisons were tenants at will, and under the statute of Michigan which enacts that "all estates at. will may be determined by either party by three months' notice given to the other party,"‡ were entitled to three months' notice to quit to terminate the tenancy.§

*Mr. L. D. Norris, contra.*

---

* Shafer *v.* Niver, 9 Michigan, 253.

† Smith *v.* Blaisdell, 17 Vermont, 200; Doe dem Willson *v.* Phillips, 2 Bingham, 13.

‡ Compiled Laws, 1871, 4304.     § Crane *v.* O'Reiley, 8 Michigan, 315.

Mr. Justice HUNT delivered the opinion of the court.

There is but a single question of law in the case, viz.: are the facts found sufficient to support the judgment? This question may be affected by a greater or less number of considerations, but it is the sole question.

There are no exceptions to the rulings of the court in the progress of the trial, and no objection of that character can now be heard. We are authorized by the statute of March 3d, 1865, where the finding of facts is special, to review " the determination of the sufficiency of the facts found to support the judgment,"* and we are authorized to examine no other question. In ordering judgment for the plaintiff, certain propositions of law are announced by the judge as having been held by him. These are important only as they necessarily and of themselves affect the question, whether the facts found are sufficient to support the judgment, and they are no more important than if they had not been thus announced. No specific exception is or can be taken to them.

It is contended that the vendor had no right, under the contract of September 1st, 1866, to re-enter upon the premises, and take possession of the down timber. This contention is based upon the idea that time was not of the essence of the contract, and that although Cole was in arrears of payment to an amount exceeding $5000, this gave no right to the vendor to declare the contract forfeited. Conceding that the intention of the parties determines the question, the claim can scarcely be sustained in relation to a sale of timber lands, where the entire value of the estate consists in the timber standing upon them, and when it is provided that there shall be monthly payments, to be regulated by the quantity of timber cut, and when it is provided that a given quantity shall be cut during every month. That the parties should not have intended to require the payments to be kept up in the ratio of the cutting, and that the vendor should not have intended to reserve his only practical protection in this respect, viz., a right of entry in the case of a failure, cannot readily be believed.

* Norris v. Jackson, 9 Wallace, 125.

The Jennisons entered into possession of the premises, as mortgagees of Cole, in the hope of saving their debt from him by operating under his contract, and they agreed with his vendor to pay the sums due and becoming due under his contract as long as they should operate under their mortgage. A dispute arising as to the amount thus to be paid, "they abandoned the lands, and the vendor entered into peaceable possession" for the alleged breach, viz., the non-payment of $5280, and took possession of all the timber that had been cut and had not been removed.

Looking at the circumstances that Cole had refused to perform, and had surrendered and assigned all his interest in the contract and the timber; that the Jennisons had ceased their operations and had abandoned the land; that Leonard had entered into possession of the land and the timber cut, and had caused the same to be removed and sawed into boards; that the right of the Jennisons extended only to such timber as had been cut when their mortgage was executed; that there is no evidence that the timber in question had then been cut, it seems sufficiently plain, not only that Leonard was the owner of and lawfully in possession of the timber and lumber in question, but that his right was assented to by all parties who were in a condition to question it. The Jennisons not only failed to show any title to the lumber at any time, but voluntarily abandoned whatever interest they might be supposed to have had.

It is urged that Leonard took certain swamp lands in Ottawa as collateral security for the performance of his contract by Cole. If we suppose this to be true, we do not see that it is very important. The payments were large in amount ($27,000, with interest), extending over a period of three years. That certain lands, neither the quality nor value of which is stated, except that they were swamp lands, were agreed to be given in security, will not affect the construction of the contract or the right to relief under it. It is sufficient, however, to say that though the contract contains an agreement to convey the swamp lands, there is no finding that these lands were conveyed to the plaintiff. It rested

in agreement merely, and there is nothing to justify the suggestion that the swamp lands were ever conveyed by Cole.

The claim that the instrument we have been discussing is a lease, does not require much consideration. It has neither a lessor, a lessee, nor a subject of demise. The only valuable portion of it, the timber, was expected to be exhausted in procuring the means of its own payment. When the supposed demise should terminate there would be no reversion left to the vendor that would be worth the taking.

Nor is there more foundation for the suggestion that the Jennisons were tenants at will and entitled to three months' notice to quit. They did not wait for a notice to quit. Without regard to the order or effect of their going, they went when they were ready, leaving Leonard to take care of his own interest as well as he was able.

This was one of the sales of real estate by contract, so common in this country, in which the title remains in the vendor and the possession passes to the vendee. The legal title remains in the vendor, while an equitable interest vests in the vendee to the extent of the payments made by him. As his payments increase, his equitable interest increases, and when the contract price is fully paid, the entire title is equitably vested in him, and he may compel a conveyance of the legal title by the vendor, his heirs, or his assigns. The vendor is a trustee of the legal title for the vendee to the extent of his payment. The result of this state of things is quite unlike that of a conveyance subject to a condition subsequent which is broken, and when re-entry or a claim of title for condition broken is necessary to enable the vendor to restore to himself the title to the estate. The legal title having, in that case, passed out of him, some measures are necessary to replace it. In the case of a contract like that we are considering no legal title passes. The interest of the vendee is equitable merely, and whatever puts an end to the equitable interest—as notice, an agreement of the parties, a surrender, an abandonment—places the vendor where he was before the contract was made.

No mode of terminating an equitable interest can be more perfect than a voluntary relinquishment, by the vendee, of all rights under the contract, and a voluntary surrender of the possession to the vendor. The finding of the court shows that this took place in relation to the premises in question, and that the surrender was accepted by the vendor.

We may safely say, then: first, that no importance is to be attributed to the circumstance, that the contract contains no clause of re-entry; or second, to the fact that the vendor has sought to enforce payment of the amounts which became due to him before the surrender and abandonment; and third, that there can be no doubt about the intention of the parties in making the contract, that the payments and the cutting should proceed in the ratio specified; or fourth, that when the payments ceased it was intended, and is the law, that the cutting should also cease; or fifth, that by the facts appearing by the finding of the court the plaintiff below is entitled to a judgment for the value of the lumber taken from his possession, with interest.

JUDGMENT AFFIRMED.