SNIDER ET AL., APPELLANTS, *v.* YARBROUGH ET AL.,
RESPONDENTS.

(No. 2,964.)

(Submitted April 5, 1911.   Decided April 22, 1911.)

[115 Pac. 411.]

*Mining—Option Contracts—Lease and Bond—Strict Construc-*
*tion—Rights of Lessor.*

Contracts—Lease and Bond—When One Agreement.
    1.   A lease and contract to sell, contained in one writing, may constitute separate agreements, if their provisions are independent of each other; where, however, the provisions are interdependent, the instrument must be deemed an entity.

Option Contract—Definition.
    2.   An option is a right acquired by contract to accept or reject a present offer within a limited or reasonable time in the future.

Same—Time—Essence of Agreement.
    3.   The clause in an option contract that "time is of the essence of this agreement," *held* to have applied to the entire instrument and not to any particular paragraph thereof.

Same—Strict Construction.
    4.   Option contracts relating to mining claims, a character of property which is subject to violent fluctuations in value, are strictly construed, and time is deemed to be of the essence thereof.

Same—Mining—Lease and Bond—Rights of Lessor.
    5.   Plaintiff and defendant entered into a written contract by the terms of which the latter leased to the former a quartz lode claim with an option to purchase, payment of installments to be made at given dates, the agreement to convey to be void if the lessee should fail to pay the full purchase price on or before a certain day, "time being of the essence of this agreement."   Plaintiff made the initial payment, and, failing to pay the second installment on time, secured an extension but again defaulted.   *Held,* that defendant, electing to treat the agreement at an end, had a right to re-enter, take possession and relet the property to others.

*Appeal from District Court, Madison County; J. B. Poindex-*
*ter, Judge.*

ACTION by D. R. Snider and others against Benjamin Yarbrough and others.   From a judgment sustaining a demurrer to the complaint, plaintiffs appeal.   Affirmed.

Cause submitted on briefs of counsel.

*Messrs. Clayberg, Maloney & O'Flynn* submitted a brief in behalf of Appellants.

The authorities hold that a mere default in the payment of an installment, if not coupled with facts showing an intent on the part of the party in default to renounce his liability under the contract, does not operate as a discharge of the adversary party. (*Mersey Co.* v. *Naylor,* 9 App. Cas. 434, affirming 9 Q. B. D. 648; *Keeler* v. *Clifford,* 165 Ill. 544, 46 N. E. 248; *Palm* v. *Railway,* 18 Ill. 217; *Osgood* v. *Bauder,* 75 Iowa, 550, 39 N. W. 887, 1 L. R. A. 655; *Winchester* v. *Newton,* 2 Allen (Mass.), 492; *West* v. *Bechtel,* 125 Mich. 144, 84 N. W. 69, 51 L. R. A. 791; *Beatty* v. *Lumber Co.,* 77 Minn. 144, 79 N. W. 1013; *Wharton* v. *Winch,* 140 N. Y. 287, 35 N. E. 589; *Bethel* v. *Improvement Co.,* 93 Va. 354, 57 Am. St. Rep. 808, 25 S. E. 304, 33 L. R. A. 602.)

"Where promises are divisible, that is, where the contract contains a number of promises to do a number of similar acts, a breach of one of them does not discharge the other party." (9 Cyc. 648; *Norris* v. *Harris,* 15 Cal. 226.) "Illustrations of divisible promises are to be found in contracts to receive and pay for goods by installments. Where the installments are numerous, extending over a considerable period of time, a default either of delivery or payment would not appear to destroy the contract, although it must necessarily give rise to an action for damages." (9 Cyc. 648.) Therefore, if the contract is to be construed as a whole, and plaintiff Snider was entitled to purchase the property on or before the thirtieth day of September, 1910, his failure to pay installments as they came due did not give Yarbrough the right to rescind the contract and treat it as null and void. (9 Cyc. 649.)

"Forfeitures are not favored in law, and conditions providing for the forfeiture of an estate are to be construed liberally in favor of the holder of the estate and strictly against an enforcement of the forfeiture. Conditions subsequent, when relied to work a forfeiture, must be created by express terms or clear implication, and are construed strictly." (*Behlow* v. *Southern Pacific R. Co.,* 130 Cal. 16, 62 Pac., at p. 295; *Randol* v. *Scott,*

110 Cal. 590, 42 Pac. 976.) "A lease working a forfeiture is strictly construed against the lessor." (*Sauer* v. *Meyer*, 87 Cal. 34, 25 Pac. 153.) "Forfeiture will be construed liberally in favor of the parties against whom it is to be enforced." (*People ex rel. Davidson* v. *Perry*, 79 Cal. 105, 21 Pac. 423; *Quatman* v. *McCray*, 128 Cal. 285, 60 Pac. 855.)

"Putting another tenant in without demand or notice to the lessee is not a proper way to enforce a forfeit." (*Kreutz* v. *McKnight*, 53 Pa. 319, 6 Morr. Min. Rep. 314.) The failure to pay the installments might, perhaps, give the defendant Yarbrough a right of damages against plaintiffs for failure to pay, but could not work a forfeiture as to rights growing out of the contract as a whole. (9 Cyc. 648.)

*Messrs. Clark & Duncan* submitted a brief in behalf of Respondents.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On March 30, 1909, plaintiff Snider and defendant Yarbrough entered into an agreement in writing, by the terms of which Yarbrough leased to Snider the Stella lode claim, and agreed to sell and convey the claim to Snider on or before September 30, 1910, provided Snider paid therefor $3,500, as follows: $500 upon the execution of the agreement; $1,000 on September 30, 1909; $1,000 on March 30, 1910, and the balance on September 30, 1910. By the provisions of the agreement, Snider was given possession of the property and permitted to carry on mining operations upon accounting for fifteen per cent of the value of ores shipped, after deducting the expenses of hauling, freight and treatment, and the royalties thus paid over were to be credited upon the purchase price. The agreement provides for the execution of a deed by Yarbrough and its deposit in escrow. The concluding paragraph reads: "But, if the party of the second part [Snider] shall fail to pay to the party of the first part [Yarbrough] the sum of thirty-five hundred dollars on

or before the thirtieth day of September, 1910, then the foregoing agreement to convey shall be null and void and no longer of any binding force or effect as against the party of the first part; time being of the essence of this agreement.'' Snider made the initial payment, took possession of the property, carried on mining operations extensively for some time, took out much ore and accounted for fifteen per cent of the net returns; but when the installment of September 30, 1909, became due he was unable to meet it, secured an extension of time for payment, but failed to make the payment within the time thus extended. Thereafter Yarbrough re-entered, took possession of the property, and leased it to defendants Connors and Beckely, who entered into possession and commenced mining operations. In the meantime Snider had assigned a certain interest in the agreement to Kelso, Newcombe, Dimmick, and Aumiller, and thereupon this suit was instituted to secure an injunction restraining defendants Connors and Beckely from further working the property, for a decree canceling the lease given to them, for the restitution of the property, and for an accounting for ores mined and disposed of. The complaint sets forth the facts much more in detail, and makes the agreement a part of it. To this complaint a demurrer was sustained, and plaintiffs, declining to plead further, suffered judgment to be entered against them, and appealed to this court.

There is but a single question presented, and that arises upon a construction of the peculiarly framed agreement. The instrument must be construed as an entity. While a lease and contract to sell contained in one writing may constitute separate
[1]    agreements if their provisions are independent (*Merk* v. *Bowery Min. Co.,* 31 Mont. 298, 78 Pac. 519), in the present instance the provisions are so completely interdependent that this instrument must be deemed an entirety, and this appears to be conceded.

The instrument cannot be treated as a contract of sale. It lacks an essential element of an enforceable bilateral agreement —mutuality. Yarbrough agreed to sell the property, but Snider did not bind himself to purchase it. The concluding paragraph

quoted above indicates beyond question that neither party considered Snider bound. The agreement is an option by which Yarbrough let Snider into possession with the right to mine and the privilege of purchasing upon the terms specified. "An option is a right acquired by contract to accept or reject a [2] present offer within a limited or reasonable time in the future." (21 Am. & Eng. Ency. of Law, 2d ed., 924; *Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695; *Black* v. *Maddox,* 104 Ga. 157, 30 S. E. 723.)

Having determined the character of the instrument, the question arises: Had Yarbrough the right to re-enter and take possession of the property upon the failure of Snider to meet the payment due September 30, 1909? It is insisted that the clause, "time being of the essence of this agreement," applies only to the provisions of the last paragraph, but this cannot be so. [3] Time is made of the essence of the agreement—not of the essence of one paragraph. The "agreement" referred to in the clause quoted must refer to the entire instrument. There is not anything to indicate a contrary purpose, and the parties will be presumed to have contracted with reference to the law in force.

Because of the advantageous position held by the one who has the option, a contract of this character is construed strictly, and time is deemed to be of the essence of it. (Pomeroy on Contracts, sec. 387; 8 Current Law, 2223.) Particularly is this true if the property is of such character as to be subject to violent fluctuations in value. (*Waterman* v. *Banks,* 144 U. S. 394, 12 Sup. Ct. 435, 36 L. Ed. 479.) The rule is now quite uni- [4] formly applied to options upon mining property. (*Clark* v. *American Dev. & M. Co.,* 28 Mont. 468, 72 Pac. 978; *Settle* v. *Winters,* 2 Idaho (Hasb.), 215 (199), 10 Pac. 216.) In 27 Cyc. 674, Mr. Clayberg, the author of the article, says: "The rule that, where the character of the property is such that it is liable to sudden fluctuations of value, time is of the essence of contracts relating thereto, is especially applicable to mining property, and such property requires, and of all properties perhaps the most requires, the persons interested in it to be vigilant

and active in asserting their rights.   Hence it is uniformly held that time is of the essence of the contract in the case of an option on mining property, or a contract for the sale thereof, even though there is no express stipulation to that effect.'' To the same effect are Fry on Specific Performance, third edition, section 1052; 2 Lindley on Mines, section 859; 2 Snyder on Mines, section 1378.

The clause, "time being of the essence of this agreement,'' will be held to apply to every material provision of the agreement, and the failure of Snider to pay the installment due September 30, 1909, within the time agreed upon, rendered his **[5]**  contingent interest in the property subject to termination at the election of Yarbrough, and he, having elected to treat the agreement at an end, could rightfully re-enter, take possession, and let the property to Connors and Beckely. (*Jennison* v. *Leonard,* 21 Wall. 302, 22 L. Ed. 539.)   The very fact that Snider asked for an extension of time within which to make payment of the installment is evidence that he deemed the time clause applicable to the provision covering the payment of each installment. (*Wiswall* v. *McGown,* 2 Barb. (N. Y.) 270.) The wisdom of the rule is well illustrated in this instance. Snider did not bind himself to purchase the claim at all.   He paid but $500 for the option, and obligated himself to account for only fifteen per cent of the net proceeds of his mining operations. In the absence of the rule, he would have been free to carry on extensive mining for eighteen months, to take out great values in minerals, if they were there, to exhaust the claim, and at the expiration of his option decline to purchase and return it to Yarbrough valueless.   The cases cited by counsel for appellants apply to bilateral contracts, and are not in point here.

The complaint having alleged the failure of plaintiffs to pay the installment due September 30, 1909, as agreed upon, does not state facts sufficient to entitle plaintiffs to any relief, and the demurrer was therefore properly sustained.

The judgment is affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Smith concur.