THOMAS ET AL., RESPONDENTS, v. STANDARD DEVELOP-
MENT CO., APPELLANT.

(No. 5,365.)

(Submitted February 16, 1924. Decided March 27, 1924.)

[224 Pac. 870.]

*Mines and Minerals—Oil and Gas Leases—Construction—Ter-
mination of Lease by Nonperformance—Remedies—Quieting
Title—Delay Money—Failure to Pay—Conditional Tender—
Decree—Harmless Error.*

Oil and Gas Lease—Liberal Construction in Favor of Lessor.
   1.   An oil and gas lease, because of the fugitive character of its
subject, must be liberally construed in favor of the lessor and strictly
construed as against the lessee.
Same—Failure to Commence Operations—Remedy—Quieting Title.
   2.   Under an oil and gas lease providing for the payment of delay
money by the lessee which also contains a clause entitling the lessor
to surrender the lease at any time upon payment of one dollar, the
lessor, upon failure of the lessee to commence drilling within the
time stipulated or to make payment of the delay money, is not con-
fined to his remedy by action to recover such money but may main-
tain suit to quiet title to the land embraced in the lease.
Same—Option Contract—Time of Essence.
   3.   *Held,* that an oil and gas lease is merely an option contract, that
time is of its essence even though a stipulation to that effect is
absent from the writing, and that failure of the lessee to act promptly
renders his rights subject to termination at the election of the lessor.
Same—Equity—Findings—When Conclusive.
   4.   In an equity case the findings of the court will not be interfered
with on appeal unless there is a decided preponderance of the evi-
dence against them.
Same—Delay Money—Tender on Unwarranted Condition not Binding on
Lessor.
   5.   Under section 7440 Revised Codes of 1921 an offer of perform-
ance must be free from any condition which the other party is not
bound to meet; hence the lessee of land for oil and gas exploration
under a contract which *inter alia* provided that moneys to be paid by
him should be paid to the lessor or deposited in bank for his credit
was not excused from making payment of delay money by the refusal
of the lessor to execute an indemnity bond assuring proper apportion-
ment of the money among grantees of portions of the lands sold
after execution of the lease, the transferees having taken subject
to its provisions; the lessee, by making payment as provided, would
have been released from all claims by the transferees and was there-

2.   Covenant for diligent prosecution of work in oil lease, see notes in
20 Ann. Cas. 1165, 1168; Ann. Cas. 1917E, 1120.

fore in no position to insist upon acceptance of the condition prior to making payment.

Same—Termination of Lease—Methods Available to Lessor.

6. Where one paragraph of an oil and gas lease provided that upon abandonment of operations by the lessee the lease should be deemed terminated, and another clause declared that the lessor could terminate it if the lessee failed to commence operations within a given time or pay delay money, the contention that it could be terminated only by abandonment was without merit.

Same—Quieting Title—Use of Word "Forfeited" for "Terminated"— Harmless Error.

7. A decree which properly quieted title to land covered by an oil and gas lease in plaintiff was not rendered fatally defective by a clause therein declaring the lease "forfeited," it being apparent that the term was used synonymously with the word "terminated."

*Appeal from District Court, Stillwater County; Albert P. Stark, Judge.*

ACTION by Alfred L. Thomas and others against the Standard Development Company. Judgment for plaintiffs and defendant appeals. Affirmed.

*Messrs. Templeman & Sanner, Mr. George W. Pierson* and *Mr. George S. Smith,* for Appellant, submitted a brief and one in reply to that of Respondents; *Mr. Sydney Sanner* argued the cause orally.

The contract does not make time the essence thereof. There is no provision in the contract that it may be forfeited for failure to either pay rent or drill. The only provision for forfeiture is found in paragraph 19, which reads, "if the lessee herein shall at any time during the continuation hereof entirely abandon the operations contemplated hereunder, then and in such event the lessor may terminate this agreement and rights and privileges hereby conferred upon the lessee by sixty days written notice." It clearly appears that the only right of forfeiture conferred upon the lessor is the condition of abandonment brought about by the lessee.

A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created. (Rev. Codes, sec. 7408; *Finley* v. *School Dist.,* 51 Mont. 411, 153 Pac.

1010; *Smith* v. *Hoffman,* 56 Mont. 299, 184 Pac. 842; *Henderson* v. *Daniels,* 62 Mont. 363, 205 Pac. 964.)

"The rule undoubtedly is that the right to declare a forfeiture must be distinctly reserved, that the proof of the happening of the event on which the right to be exercised must be clear, that the party entitled to do so must exercise his right promptly, and that.the result of enforcing the forfeiture must not be unconscionable." (*Thompson* v. *Christie,* 138 Pa. St. 230, 11 L. R. A. 236, 20 Atl. 934.)

Where the forfeiture provided for has been strictly limited to certain species of default, for such alone can the lease be terminated. (Lindley on Mines, sec. 862; *South Penn. Oil Co.* v. *Stone* (Tenn. Ch.), 57 S. W. 374; *Ammons* v. *South Penn. Oil Co.,* 47 W. Va. 610, 35 S. E. 1004; *Marshall* v. *Forest Oil Co.,* 198 Pa. St. 83, 47 Atl. 927.)

Abandonment is a matter of intention and must be made by one without being pressed by duty, necessity or utility to himself, but simply because he desires no longer to possess the thing. (*Middle Creek D. Co.* v. *Henry,* 15 Mont. 576, 39 Pac. 1054; *Moore* v. *Sherman,* 52 Mont. 543, 159 Pac. 966, and cases there cited.) And the same rule applies to oil and gas leases, permits or rights as it does to other contracts and situations. (*Fisher* v. *Crescent Oil Co.* (Tex. Civ.), 178 S. W. 905; *Ahrns* v. *Chartiers Valley Gas. Co.,* 188 Pa. St. 249, 41 Atl. 739.)

The mere fact that the thing possesses value raises a presumption against an intent of abandonment. (*Atchinson* v. *Peterson,* 1 Mont. 565.) Abandonment is a mixed question of intent and act and mere nonuser without intent to relinquish does not constitute abandonment. (*Tucker* v. *Jones,* 8 Mont. 230, 19 Pac. 571.)

Where the lease is for a stipulated period, providing development is to be commenced within a specified time, and such development relieves lessee from payment, or on failure to drill within the specified period the lessee agrees to pay rent during the period of the lease, and there is not an express

stipulation for forfeiture by reason of failure to pay promptly, a forfeiture clause on other grounds will not be applied, but the lessor is bound to enforce his contract for the rent. Such is his agreed compensation for the delay, even though the contract contains a surrender clause relieving lessee from future payments. If the land is being drained by wells on adjoining property the lessor has his action in damages, or equity will compel development to prevent the loss. (*Thompson* v. *Christie*, 138 Pa. St. 230, 11 L. R. A. 236, 20 Atl. 934; *McKean Nat. Gas Co.* v. *Wolcott*, 254 Pa. St. 323, 98 Atl. 955; *Pyle* v. *Henderson*, 65 Va. 39, 63 S. E. 762; Morrison on Oil and Gas, p. 119; *Harris* v. *Ohio Oil Co.*, 57 Ohio St. 118, 48 N. E. 502; *Davis* v. *Chautauqua Oil & Gas Co.*, 78 Kan. 97, 96 Pac. 47; *Rich* v. *Doneghey* (Okl.), 177 Pac. 87; *Monarch Gas Co.* v. *Roy*, 81 W. Va. 723, 95 S. E. 789; *Sunday Lake Min. Co.* v. *Wakefield*, 72 Wis. 204, 39 N. W. 136.)

*Messrs. Goddard & Clark* and *Mr. B. E. Berg*, for Respondents, submitted an original and a supplemental brief; *Mr. O. F. Goddard* and *Mr. Berg* argued the cause orally.

Defendant breached the implied covenant of lease to drill and develop property. An oil and gas lease, by great weight of authority, has the effect of vesting lessee, upon execution and delivery, with a leasehold estate in the land, and the right to explore for and sever and appropriate the oil and gas deposits with it. (*McKean Nat. Gas. Co.* v. *Wolcott*, 254 Pa. St. 323, 98 Atl. 955; *Alleghany Oil Co.* v. *Snyder*, 106 Fed. 764, 45 C. C. A. 604; *Chandler* v. *Hart*, 161 Cal. 405, Ann. Cas. 1913B, 1094, 119 Pac. 516; *Rich* v. *Doneghey* (Okl.), 177 Pac. 86; *Lindley* v. *Raydure*, 239 Fed. 928; *Guffey* v. *Smith*, 237 U. S. 101, 59 L. Ed. 856, 35 Sup. Ct. Rep. 526 [see, also, Rose's U. S. Notes].)

Such an agreement, on execution and delivery, becomes wholly executed on the part of the lessor, and, except for the payment of whatever cash consideration is paid (usually a

nominal sum), is wholly executory on the part of the lessee. Thus lessor having nothing to withhold in the way of performance, is wholly dependent on the performance of the lessee's promises, in order to obtain the real and moving consideration for his lease.

Because of the nature of these instruments, and the peculiar nature of the oil and gas which is the subject matter thereof, a different rule of construction prevails in interpreting them than in ordinary agricultural or residential leases. Oil and gas leases are construed strictly against the lessee and in favor of the lessor. (Thornton on Oil and Gas, 3d ed, sec. 83; Morrison on Oil and Gas, p. 62; *Aycock* v. *Reliance Oil Co.* (Tex. Civ.), 210 S. W. 848; *Bearman* v. *Dux Oil Co.*, 64 Okl. 147, 166 Pac. 199; *Jameson* v. *Chanslor Oil Co.*, 176 Cal. 1, 167 Pac. 369, *Burgan* v. *South Penn Oil Co.*, 243 Pa. St. 148, 89 Atl. 823; *Jenkins* v. *Williams*, 191 Ky. 165, 229 S. W. 94; *Hitson* v. *Gilman* (Tex. Civ.), 220 S. W. 140; *Cockrum* v. *Christy* (Tex. Civ.), 223 S. W. 308; *Risch* v. *Burch*, 175 Ind. 621, 95 N. E. 123; *Conkling* v. *Krandusky*, 112 N. Y. Supp. 13.) "Perhaps in no other business is prompt performance of contracts so essential to the rights of the parties, or delay by one party likely to prove so injurious to the other." (*Munroe* v. *Armstrong*, 96 Pa. St. 307; *Huggins* v. *Dailey*, 99 Fed. 606, 48 L. R. A. 320, 40 C. C. A. 12.) "Such leases will be construed so as to promote development and prevent delay and unproductiveness." (*Parish Fork Oil Co.* v. *Bridgewater Gas Co.*, 51 W. Va. 583, 42 S. E. 655; *Dittman* v. *Keller*, 55 Ind. App. 448, 104 N. E. 40; *New State Oil & Gas Co.* v. *Dunn*, 75 Okl. 141, 182 Pac. 514.) Having in mind these principles, it is manifest that the moving consideration inducing a lessor to enter into a lease of this character is not the nominal cash consideration, nor the nominal annual rental paid for delay in drilling, but is the expectation of receiving substantial royalties arising out of lessee's operations. This necessarily implies that the lessee will drill and develop the

land. The lessee's agreement to drill and develop is therefore the real consideration of the contract.

The law therefore raises an implied obligation on the part of the lessee in all oil and gas leases to commence drilling within a reasonable time, to prosecute the same with reasonable diligence, and to proceed with reasonable diligence to drill sufficient wells to fully develop all the oil and gas content of the land.

The entire lease breathes the intention that the purpose of the demise was that land should be drilled, and since the lease does not provide definitely the ultimate time when these operations must commence, a reasonable time will be implied. (*Acme Oil & Mining Co.* v. *Williams,* 140 Cal. 681, 74 Pac. 296; *Mills* v. *Hartz,* 77 Kan. 218, 94 Pac. 142; *Davis* v. *Riddle,* 25 Colo. App. 162, 136 Pac. 551.)

In cases where the measure of diligence for drilling the first well is fully defined and promptly complied with, there is still the implied obligation to commence and drill with reasonable diligence other wells, regardless of whether the first well is a producer or is dry. (*Acme Oil & Mining Co.* v. *Williams,* 140 Cal. 681, 74 Pac. 296; *Parish Fork Oil Co.* v. *Bridgewater Gas Co.,* 51 W. Va. 583, 59 L. R. A. 566, 42 S. E. 655; *Aye* v. *Philadelphia Co.,* 193 Pa. St. 451, 74 Am. St. Rep. 696, 44 Atl. 555; *Foster* v. *Elk Fork Co.,* 90 Fed. 178, 32 C. C. A. 560; *Dinsmoor* v. *Coombs,* 177 Ky. 740, 198 S. W. 58.)

In leases containing a clause authorizing the lessee to either drill or pay delay rentals the lessor is not bound to accept the delay rentals even though timely tendered, for the entire term of the lease, but may refuse them and demand that the lessee commence drilling within a reasonable time in accordance with the purpose and intent of the lease, notwithstanding the drill or pay clause. (*Hitson* v. *Gilman* (Tex. Civ.), 220 S. W. 140; *Wilson* v. *Purnell,* 199 Ky. 218, 250 S. W. 850; *Carder* v. *Blackwell O. & G. Co.,* 83 Okl. 243, 201 Pac. 252.)

In the case of *McKee* v. *Grimm,* 57 Okl. 680, 157 Pac. 308, the court in construing an "or" lease which did not contain a forfeiture clause used the following language: "And it is generally held by courts, in construing contracts similar to the one under consideration in the case at bar, that a clause providing that a well shall be drilled within a specified time or the lessee will pay a stipulated rental, is for the benefit of the lessor only, and that for nonperformance on the part of the lessee he has two remedies; he may either cancel and terminate the lease for the nonperformance, or he may, if he chooses, collect the rents stipulated in the lease. To the same effect are *Bettman* v. *Harness,* 42 W. Va. 433, 36 L. R. A. 566, 26 S. E. 271; *Melton* v. *Cherokee Oil & Gas Co.,* 67 Okl. 247, 170 Pac. 691; *Jennings Harwood Oil Syndicate* v. *Houissiere Latrielle Oil Co.,* 119 La. 793, 44 South. 481; *Smith* v. *Root,* 66 W. Va. 633, 66 S. E. 1005; *Conkling* v. *Krandusky,* 127 App. Div. 761, 112 N. Y. Supp. 13; *Venture Oil Co.* v. *Fretts,* 152 Pa. St. 451, 25 Atl. 732; *Crawford* v. *Ritchey,* 43 W. Va. 252, 27 S. E. 220.

HONORABLE LYMAN H. BENNETT, District Judge, sitting in place of MR. JUSTICE STARK, disqualified, delivered the opinion of the court.

This action is before us on an appeal from a judgment entered in the trial court quieting title in and to certain lands lying in Stillwater County, Montana. The action was commenced by plaintiff Albert L. Thomas and fifty-one other parties plaintiff, the complaint containing fifty-two separate causes of action, each being an ordinary short form statement, seeking to have some one individual plaintiff's title quieted. The prayer of the complaint was that defendant be required to set forth the nature of its claim in and to said lands; for the determination of all adverse claims; for a judgment that each plaintiff was the owner of the lands claimed by him free and clear of all claims whatever; and that the defendant be for-

ever enjoined and debarred from asserting any claim whatever in or to said lands or premises adverse to plaintiffs' claims thereto.

We are surprised that the question of the misjoinder of parties plaintiff was not raised or suggested to the trial court. We cannot, however, go into this matter, since it is not before us.

As we view the answer, it admits the ownership by plaintiffs of the lands in controversy, claiming, however, that plaintiffs' titles were and are subject to an instrument which, for descriptive purposes only, will be called a "lease" throughout this opinion. The "lease" is set out in the answer by reference to an attached copy. The answer discloses that it was executed by plaintiff Thomas, who was a predecessor in interest of all the other plaintiffs, to one Marcia Stocker, and was finally transferred to defendant. The defendant, by way of showing that the "lease" was and is a valid and subsisting instrument and that its rights thereunder were and are valid and subsisting, sets out facts which it contends show that it offered to perform, and that performance has been prevented and excused. Plaintiffs, in turn, by reply, deny the facts on which the claim of excuse is based. There are other allegations of both answer and reply which will not be noticed herein except to state that defendant claims that the affirmative matter of the reply constitutes a departure in that the action was to quiet title and the reply sets out purported grounds for cancellation of the "lease."

There may be some question as to whether in an action to quiet title a decree of cancellation may be entered. We are not, however, concerned with that question, for the reason that the action being in equity, and the appeal being from the judgment, the entire record is before us and it is our duty to consider the case upon its merits. By this we mean that we will reject any surplusage which may appear at any point and consider the question as to whether under the pleadings and

the evidence the decree was warranted. We have concluded that it was.

While there is a distinction between an action to quiet title and one for cancellation, as is pointed out in the case of *Castro v. Berry,* 79 Cal. 443, 21 Pac. 946, on which case defendant relies, we cannot say that where the effect of a decree quieting title is to adjudicate that a given judgment is null and void the action thereupon becomes one for cancellation. Disregarding, therefore, the allegations of the reply, which may lean toward the cancellation theory, there are the clear-cut issues of an action to quiet title. Thereupon the question as to departure disappears, if it ever could have been considered present.

The questions upon the merits of the case are: (1) Was there any condition in the "lease," the nonperformance of which brought about a termination of defendant's rights thereunder? (2) Was performance excused?

In order that the situation may be understood, a more complete statement of the facts becomes necessary:

The "lease" in question was a renewal of a pre-existing lease for which there was a sufficient consideration. Except for date, the last lease was identical in language with the first. The last "lease" was executed July 30, 1914. The portions of the "lease" with which we are concerned are as follows:

"That the lessor  *  *  *  has granted, demised, leased and let  *  *  *  unto the lessee  *  *  *  for the sole and only purpose of mining and operating for oil, gas and all other minerals, the building of tanks, power stations and structures  *  *  *  and to produce and take care of the production of said lands, all on that certain tract of land in the county of Stillwater, state of Montana, the complete and detailed description of which is to this lease annexed.  *  *  *

"To have and to hold unto the lessee,  *  *  *  for the purpose herein expressed only for the term of twenty-five (25) years  *  *  *  and as long thereafter as oil, gas or other

minerals are produced from said lands.  *  *  *  The fore-
going grant is made upon the following express conditions:

"1. That the sole and only purpose of this grant shall be to
vest in the lessee the right to drill, mine, bore, operate, produce,
store, transport, deliver and sell oil, gas or other minerals
lying upon, in or under the above demised premises, and in-
tends only to vest in the lessee the exclusive right so to do,
without vesting in the lessee the right to use, occupy or control
said tract of land or any part thereof for any other purpose
whatsoever.  *  *  *

"13. That all payments which shall fall due under this lease
may be made directly to the lessors or deposited directly by
lessee to the credit of lessor at the Columbus State Bank.

"14. It is expressly understood and agreed that the lessee,
her heirs, executors, administrators, successors or assigns, shall
have the right at any time, upon payment of one dollar ($1)
to the lessor, to surrender and cancel this lease after which all
payments and liabilities thereafter to accrue under and by
virtue of the terms hereof shall cease and determine.

"15. The lessee expressly covenants and agrees to commence
operations upon some portion of the demised premises within
ten months from the date hereof, unavoidable accidents and
delays, however, specifically excepted, or to thereafter pay to
the lessors at the rate of five thousand dollars for each and
every additional year such commencement of operations is de-
layed from the date above mentioned for the commencement of
operations until a well is commenced upon said premises or
some portion thereof; and it is agreed that *bona fide* com-
mencement of the operations of such well and completion thereof
to a depth of 1500 feet within a reasonable time thereafter
shall operate as a full liquidation of all rents under this pro-
vision during the remainder of the term of this lease.  *  *  *

"19. If the lessee herein shall at any time during the con-
tinuation hereof entirely abandon the operations contemplated
hereunder, then and in such event the lessor may terminate

this agreement and the rights and privileges hereby conferred upon the lessee, by a sixty-day written notice, given to the then owner of the rights hereby conferred, and if within such sixty-day period operations shall not be resumed, the rights of the lessee herein shall, without further acts of the lessor, become wholly terminated and ended. * * * It is the intention of the party of the first part in the foregoing agreement that the above schedule of lands shall include all of the lands owned by the said party of the first part at the date of this agreement which are situate in Stillwater county and lie north of the south line of township one (1) south, and that any errors in the description of the lands scheduled, or any omissions, shall be regarded as mutual mistakes of fact and thereupon be subject to correction to conform to the facts."

The specific description referred to in the "lease" is of lands totaling between 20,000 and 30,000 acres. Subject to the "lease" plaintiff Thomas deeded portions of the premises to other plaintiffs. No drilling operations were ever commenced. The only payment made was pursuant to arrangement reduced to writing, dated January 24, 1917, whereby Thomas entered into a contract and bond indemnifying defendant against claims of any other party who might be entitled to participate in the payment of the sum of $5,000 to be paid to Thomas. From the time of the entering into the contract of indemnity defendant did nothing by way of performance except to offer to pay under the same conditions as those just referred to. The offer was made several times, and after the first arrangement was entered into was always refused by Thomas. There is no claim that the offer was ever made to any other person than Thomas or his acknowledged agent.

The facts upon which defendant based its excuse for non-performance may be briefly stated. The claim is made that at the time of the execution of the first "lease" Thomas was the owner of some 70,000 acres of land, all of which was included under the specific and "catch-all" description attached

to the "lease." Much of the additional land was transferred by Thomas after the execution of the "lease." Defendant claimed that some of the grantees of land not specifically described in the "lease" denied that their lands were included. Defendant also claims that it was upon one of these tracts that it purposed to commence drilling. It claimed that the dispute of its right to do so excused performance. Thomas had also deeded lands which were specifically described in the "lease." Defendant claims that it could not with safety pay the "delay money" owing to the confusion which resulted from these transfers and the question as to what lands were included. Based upon this proposition, defendant asserts its right to attach the conditions which were attached to its offers, and contends that the conditional offer extinguished the obligation to perform.

We now take up the first question which we have mentioned: Was there any condition in the "lease" the nonperformance of which brought about a termination of defendant's rights thereunder?

The general rule which governs the subject of oil and gas "leases" is that because of the fugitive character and fluctuat-[1] ing value of the true subject matter thereof, such contract will be liberally construed in favor of the lessor and strictly construed as against the lessee thereunder. (See *Daley* v. *Torrey*, 69 Mont. 599, 223 Pac. 498.)

Defendant relies upon the proposition that plaintiffs' only remedy was a suit to recover "delay money." We do not say [2] what the result would be in the absence of the surrender clause, paragraph numbered 14, of the "lease." On all the facts we do say, however, that because of the presence of that clause the plaintiffs were not relegated to that as the only remedy.

Let us examine the situation which is presented. What was the character of this instrument at the time of its execution? Was the lessee bound to do anything? Could the lessor have

forced the lessee to perform? For the first ten months, clearly
the lessor was without any remedy whatsoever. At any time
during that period the lessee could have said: "We do not care
to proceed. Here is one dollar. We surrender." No liability
to either drill, pay or do any other act would attach. True it
is that unless the "lease" had been surrendered the lessee could
elect to extend the term within which to decide whether to
proceed further by the payment of the sum of $5,000. At any
time during such additional year the option could be exercised
to refuse to go further. The contract does not even provide
that the $5,000 was payable in advance. It might be held,
though we doubt it, that the liability to pay the sum of $5,000
did not attach until the end of twenty-two months from the
date of the instrument. In such an event the lessee would un-
doubtedly contend that it could relieve itself from any liability
for the payment, by electing to surrender at any time within
the twenty-two months.

The reasoning of the case of *Watford Oil & Gas Co.* v. *Ship-
man*, 233 Ill. 9, 122 Am. St. Rep. 144, 84 N. E. 53, appeals to
us. In that case the Illinois supreme court was considering
whether the appellant therein who claimed under one of several
tenants in common could compel a partition of the premises.
The lease in that case contained a surrender clause which is not
distinguishable in effect from the one before us. As to its
effect the court said: "Under this clause appellant may sur-
render the lease for cancellation at any time and thereby re-
lieve itself from all future liability under it. The option of
appellant to terminate the lease at any time upon payment of
one dollar deprives appellant of the right to specific perform-
ance, directly or indirectly, until it has performed the contract
or placed itself in such position that it may be compelled to
perform the contract on its part. If the relief here sought
should be granted, appellant, under the cancellation clause of
the lease, may nullify the decree by exercising its option not
to proceed further. A court of equity will not do a vain and

useless thing by rendering a decree settling the rights of parties which one of them may set aside at his will.'' (See, also, *Utrey v. Keith,* 237 Ill. 284, 86 N. E. 696.)

In *Kolachny* v. *Galbreath,* 26 Okl. 772, 38 L. R. A. (n. s.) 451, 110 Pac. 902, the supreme court of Oklahoma discussed the effect of such a surrender clause, saying: ''It is not essential to determine in this case as to whether such an option would be valid at law; it being obvious that under authorities heretofore cited, which seem to be supported by reason, that equity will not decree that one party specifically perform a contract which the other party at its option may refuse to carry out.'' The court had cited the case of *Watford* v. *Shipman, supra,* together with a number of other authorities.

We are mindful of the fact that many courts make a distinction between so-called ''or'' and ''unless'' oil and gas ''leases,'' on the question as to their being terminable before the expiration of the entire time they are to run. For the purpose of showing the distinction which some courts make, we quote the language of the supreme court of Oklahoma used in the case of *Garfield Oil Co.* v. *Champlin,* 78 Okl. 91, 189 Pac. 514: ''The forms of leases are prepared by the lessee, and not by the lessors. We have what is known as the 'or' lease, and the 'unless' lease. In the case of the 'or' lease, the lessee surrenders by the payment of the consideration, usually nominal, for his privilege of surrender, and by the execution and delivery of a release, and upon failure so to surrender by this exclusive method the lessee becomes bound for the payment of the rental for another term. In order to avoid this additional labor in terminating the lease, the 'unless' lease was provided, wherein the lessee may surrender merely by his failure or refusal to pay the rental. The lease thereby automatically terminates. In the case of the 'or' lease, the lessee abandons his lease by the formal act and in the manner described in the lease; and in the 'unless' lease, the lessee abandons his lease merely by failing to pay the

rental, by the payment of which he could extend the time for development another term.''

In the case of *Smith* v. *Guffey*, 202 Fed. 106, 120 C. C. A. 436, the United States circuit court of appeals for the seventh circuit discussed the distinction between an Indiana ''unless'' lease and an Illinois ''or'' lease containing a surrender clause, using the following language: ''Is this obligation of these Illinois lessees, however, really or only apparently enforceable? The surrender clause gives them the right at any time, before or after the expiration of the nine months, to absolve themselves from any further liability. If they exercise this right, if they surrender the lease as, at their absolute option, they are empowered to do, they are thereafter just as free from any obligation enforceable by the lessor, as is the Indiana lessee. True, they must pay $1 and perhaps make an actual surrender, but this purely nominal obligation cannot change the rights of the parties in a court of equity.'' It is true that the circuit court of appeals was reversed by the United States supreme court. (See *Guffey* v. *Smith*, 237 U. S. 101, 59 L. Ed. 856, 35 Sup. Ct. Rep. 526 [see, also, Rose's U. S. Notes].) As we understand the supreme court's decision, however, it is based upon other grounds than those under discussion in the quoted portion of the opinion. In the opinion which resulted in the reversal, the supreme court laid down the proposition that the rule had been theretofore announced by the Illinois supreme court that, under the form of ''lease'' which was before them, a present vested right—''a freehold interest''—was created. The court then proceeded to apply another rule, *viz.*, that the federal courts, while bound by the local rules of substantive law, were not determined as to remedies by local laws or rules of decision.

At least until oil or gas might be discovered on the premises the ''lease'' before us falls within the character of instrument referred to in 18 R. C. L., page 1210: ''According to the rule in a number of jurisdictions a lease for the purpose of operating for oil and gas for a prescribed period and so much longer

as oil or gas is found in paying quantities, on no other consideration than prospective oil royalty and gas rental, vests no present title in the lessee except the mere right of exploration.'' See, also, *Garfield Oil Co.* v. *Champlin, supra,* which cites *Kolachny* v. *Galbreath, supra,* wherein it is said: ''The lease relied upon by the plaintiff does not vest in him the title to the oil and gas in said land, and is not a grant of any estate therein, but is simply a grant of a right to prospect for oil and gas, no title vesting until such substances are reduced to possession by extracting the same from the earth—an incorporeal hereditament.''

On the question of the nature of the ''lease'' as being an [3] option the case of *Ide* v. *Leiser,* 10 Mont. 5, 24 Am. St. Rep. 17, 24 Pac. 695, is enlightening, and we feel that we may be pardoned for paraphrasing some of the language of Mr. Justice De Witt therefrom. An option is neither a lease nor a contract to lease. It is simply a contract whereby the owner of the property agrees with another person that he has the right to exercise certain privileges with reference to the property in question—in this case the right to explore the land for gas and oil—within a time certain. He does not lease his land; he does not then agree to lease it; but he does contract to give to the other party the right to exercise certain privileges with reference thereto at the election, or option, of the other party. The second party gets *in praesenti* the right to enter upon and prospect for oil and gas and to extract the same if found, if he elects. The owner parts with his right to sell, lease or otherwise dispose of his lands or to operate them himself or to permit anyone else to do so in the manner the other party has the privilege of doing, for a limited period. See, also, *Snider* v. *Yarbrough,* 43 Mont. 203, 115 Pac. 411, wherein the following quotation is found: ''An option is a right acquired by contract to accept or reject a present offer within a limited or reasonable time in the future''—citing *Ide* v. *Leiser, supra,* and other authorities.'' It is apparent, therefore, that there is no real dis-

tinction between the instant "lease" and the ordinary option. And we say that owing to the surrender clause in this "lease" all this was at the option of the defendant herein.

Such being the conclusion, we cannot escape the rule stated in *Snider* v. *Yarbrough, supra,* wherein it was said: "Because of the advantageous position held by the one who has the option, a contract of this character is construed strictly, and time is deemed to be of the essence of it. (Pomeroy on Contracts, sec. 387; 8 Current Law, 2223.) Particularly is this true if the property is of such character as to be subject to violent fluctuations in value. (*Waterman* v. *Banks,* 144 U. S. 394, 36 L. Ed. 479, 12 Sup. Ct. Rep. 435 [see, also, Rose's U. S. Notes].) The rule is now quite uniformly applied to options upon mining property. (*Clark* v. *American Dev. & M. Co.,* 28 Mont. 468, 72 Pac. 978; *Settle* v. *Winters,* 2 Idaho [Hasb.], 215 [199], 10 Pac. 216.) In 27 Cyc. 674, Mr. Clayberg, the author of the article, says: 'The rule that, where the character of the property is such that it is liable to sudden fluctuations of value, time is of the essence of contracts relating thereto, is especially applicable to mining property, and such property requires, and of all properties perhaps the most requires, the persons interested in it to be vigilant and active in asserting their rights. Hence it is uniformly held that time is of the essence of the contract in the case of an option on mining property, or a contract for the sale thereof, even though there is no express stipulation to that effect.' To the same effect are Fry on Specific Performance, 3d ed., sec. 1052; 2 Lindley on Mines, sec. 859; 2 Snyder on Mines, sec. 1378."

If such is the rule with reference to ordinary mining options and, as some courts hold, to all mining contracts, certainly it must be said to apply with equal if not greater force to an oil and gas "lease," where, in addition to the ordinary mining features, the actual subject matter may be drained off and escape within extremely short periods.

In this connection we wish to add that we have given serious consideration to the effect of the provisions of section 7549,

Revised Codes of 1921, touching upon the subject of time being of the essence. Our conclusion is that such an option as we have here and as was before the court in *Merk* v. *Bowery Min. Co.,* 31 Mont. 298, 78 Pac. 519, is not a contract within the meaning of section 7549.

Time therefore was of the essence of the "lease" here under consideration, and the clause "time being of the essence of this agreement" will be held to apply to every material provision of the "lease," and the failure of the defendant to act promptly rendered its rights subject to termination at the election of the plaintiffs. They having elected to treat the "lease" at an end were entitled to the decree quieting their title. (*Merk* v. *Bowery Min. Co., supra; Snider* v. *Yarbrough, supra.*)

At this point we should stop long enough to say that in considering the *Watford* v. *Shipman Case, supra,* it should be borne in mind that we are not here discussing the question as to whether the lessee could compel specific performance. It should also be noted that the Illinois court did not hold that a lessee who was tendering prompt performance could not obtain relief by way of specific performance. We cite the Illinois and circuit court of appeals cases solely by way of argument upon the proposition that the "lease" before us is nothing more than an option and without any intention of passing upon any phase of the subject of specific performance.

Defendant contends that notwithstanding any such construction as we have given the instrument, the acts of the plaintiffs and in particular of plaintiff Thomas, prevented and excused it from performing, and that in fact it did offer to perform within the meaning and spirit of the "lease."

This brings us to the second question we have suggested: "Was performance excused?" Defendant says that it intended to drill, but the man who owned the land where it wished to commence operations would not permit it to do so on his land, and that because thereof it was excused from performing at all.

Peculiarly enough the land on which defendant claims it desired to drill was not specifically described in the "lease."

It was only there, if at all, by virtue of the "catch-all" clause. In this connection, it appears that defendant by its answer sought to have the court construe the "catch-all" clause of the "lease" as including the tract of land upon which they claim they intended to drill. The prayer of the answer included a request for the reformation of the "lease." Much testimony was adduced directed at the question of the construction of that "catch-all" clause. The evidence consisted of direct testimony, both of the men who secured the "lease" from Thomas and of Thomas himself, together with other evidence as to acts of both parties which was relevant to the subject. On this testimony the trial court found that no land which was under contract of sale at the time of the execution of the original "lease" was included in that "lease." There was a specific finding by the trial court that the land upon which defendant claimed it had intended to drill had been sold under contract prior to the execution of the first "lease." The rule which governs us in such cases is restated in *Allen* v. *Petrick,* 69 Mont. 373, 222 [4] Pac. 451, as follows: "This court, will not overturn the findings of the trial court unless there is a decided preponderance of the evidence against them (*Copper Mountain M. & S. Co.* v. *Butte & Corbin Con. C. & S. Co.,* 39 Mont. 487, 133 Am. St. Rep. 595, 104 Pac. 540), and when the evidence, fully considered, furnishes reasonable grounds for different conclusions, the findings will not be disturbed (*Nolan* v. *Benninghoff,* 64 Mont. 68, 208 Pac. 905)." We are unable to say that the evidence in this action preponderates against the findings of the trial court thereon.

The assertion is also made by defendant that it was bound [5] to see that any amount paid under the "lease" was properly apportioned and that because thereof it was privileged to require of plaintiffs a contract of indemnity and bond before making any of the payments provided for by the "lease." In support of this position, sections 7418 and 7423 of the Revised Codes are cited. We do not so construe those sections. Assuming, without deciding, that the payments provided for by

the "lease" are of such a character as are contemplated by sections 7418 and 7419, which should be read together, that is, that they are "covenants running with the land," section 7423 does no more than fix the measure of apportionment. It does not in any manner affect the duty of the defendant as to performance or offer of performance. In the absence of the provisions of the "lease," this duty was fixed by sections 7424 et seq., Revised Codes.

By the terms of the "lease" it was provided "that all payments which shall fall due under this lease may be made directly to the lessors or deposited directly by lessee to the credit of lessor at the Columbus State Bank." This provision being in the "lease," all transferees from Thomas, the original lessor, took subject thereto, and the defendant would have been absolutely released from all claims upon such payment, even without the intervention of the statutory rules.

Upon the facts as disclosed by the record it is apparent that the defendant was not excused from performing and that it had attached to its offer of performance a condition which the lessors were not bound on their part to perform and that the obligation to perform was never extinguished. "An offer of performance must be free from any conditions which the creditor is not bound, on his part, to perform." (See sec. 7440, Rev. Codes 1921.)

Time having been of the essence upon the election of the plaintiffs to treat the "lease" as terminated, it became no longer of any force or effect, and the decree of the trial court quieting the title in the plaintiffs was proper.

While we have said that the decision rests upon the two questions which we have stated, there is another proposition [6] which defendant asserts, which we think should be given some attention. It is the contention that the only condition upon which the "lease" could be terminated prior to the time fixed herein was that provided in the paragraph numbered 19, and that there was no abandonment within the meaning of that part

of the "lease." As to the abandonment feature we agree with counsel. There was no intent to abandon shown if in fact the term "abandonment" could be held to cover nonaction. As to that being the only condition upon which the lease could be terminated we do not agree. This clause must be read in connection with paragraph 15. That paragraph provides for commencement of operations and completion of a well to a depth of 1,500 feet, or payment. Upon commencement of operations, if continued reasonably, no other acts were required of defendant to keep the option alive. Further than that, the completion of a "dry" well to a depth of 1,500 feet would keep the "lease" alive for the full twenty-five years unless the defendant elected to surrender or unless "operations" were abandoned. It was to cover such a contingency that paragraph 19 must have been inserted. That feature does not affect the construction which we have placed upon the entire contract.

We wish to advert to the proposition that in the decree the [7] trial court adjudged and decreed that the lease was "forfeited." If it was the intention of the court to use the term "forfeited" in its strict and technical sense, that portion of the decree was incorrect. It is apparent, however, that the term was used as synonymous with the word "terminated" as we have used it herein. In any event, it is immaterial what language was used, since by its decree the title was quieted in plaintiffs. This was the relief prayed for, and we think the pleadings and the evidence fully warrant such a decree. We have carefully examined all the specifications of error and find them all without merit. We deem it unnecessary to discuss them in detail.

The judgment is affirmed.

*Affirmed.*

Mr. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and GALEN concur.