TEISINGER, RECEIVER, RESPONDENT, v. HARDY, APPELLANT.

(No. 6,508.)

(Submitted October 4, 1929. Decided December 12, 1929.)

[282 Pac. 1050.]

*Mr. C. E. Collett* and *Mr. C. A. Spaulding,* of Counsel, for Appellant, submitted an original and a reply brief; *Mr. Spaulding* argued the cause orally.

*Messrs. Hildebrand & Warren* and *Messrs. Loud & Leavitt,* for Respondent, submitted a brief; *Mr. Dewitt C. Warren* and *Mr. Charles H. Loud* argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from a decree quieting title in C. L. Teisinger, as receiver of the Yellowstone Bank & Trust Company, as against the claim of James Hardy and all persons claiming any interest in a tract of land in Richland county.

The record as to transactions affecting title to the tract in suit is somewhat confusing; the following tabulation may tend to clarify it:

(1) The Brown transaction:
    (a) May 24, 1921, W. A. Hardy purchased the tract from A. B. Brown and executed purchase price mortgage on it and another tract.
    (b) February 19, 1926, W. A. Hardy deeded to Brown land in Iowa.
    (c) February 19, 1926, Brown assigned Hardy mortgage to James Hardy.

(2) The McDonald transaction:
    (a) November 9, 1922, W. A. Hardy mortgaged tract to A. W. McDonald.
    (b) June 12, 1925, McDonald instituted foreclosure proceedings.
    (c) September 11, 1925, decree of foreclosure entered.
    (d) October 17, 1925, sheriff's certificate of sale issued to McDonald.
    (e) March 3, 1926, McDonald assigned certificate to James Hardy.
    (f) July 15, 1927, sheriff's deed delivered to James Hardy.

(3) The Teisinger transaction:
  (a) November 4, 1921, W. A. Hardy delivered his note to the bank.
  (b) January 13, 1923, Teisinger became receiver of the bank.
  (c) August 6, 1925, Teisinger began action on the note.
  (d) November 4, 1925, judgment entered against W. A. Hardy.
  (e) February 13, 1926, tract sold on execution to Teisinger.
  (f) February 14, 1927, sheriff's deed issued to Teisinger.
  (g) May 27, 1927, Teisinger brought action against McDonald alone to set aside the McDonald mortgage and certificate of sale on the ground of fraud.
  (h) September 15, 1927, decree confirming title in Teisinger, free from claim of McDonald "or any person claiming by or through him."

From the foregoing it will be seen that the Brown mortgage came first, the note to the bank second, and the McDonald mortgage third.

The bank had no lien on the tract, and therefore the McDonald mortgage was subject only to the Brown mortgage. Foreclosure proceedings on this mortgage had been begun before Teisinger commenced action on the bank's note, and the W. A. Hardy title to the property had been foreclosed and the tract sold on foreclosure sale before Teisinger obtained judgment against Hardy. It will be further seen that, at the time Teisinger brought his action to have the McDonald mortgage declared fraudulent, the title acquired by McDonald had been assigned to James Hardy. In that action McDonald, answering, alleged that "he is not now and has not been for some time past the owner of the land described in plaintiff's action to recover clear title," and "that he has not and never did enter into any conspiracy to defraud the creditors of W. A. Hardy, to his knowledge."

James Hardy was not made a party to that action, and it is not charged therein that he was a party to the conspiracy

alleged to have been entered into between McDonald and W. A. Hardy.

The record discloses that McDonald was a resident of Iowa; that James Hardy went into possession of the tract in 1925, first as a renter from McDonald and later held under the title acquired by him.

McDonald, served by publication, sent his answer to James Hardy for filing and service; James Hardy complied with his request, and sent him a bill for the filing fee. He had not, at that time, recorded his assignment of the certificate of sale.

With the record in this condition, plaintiff commenced the present action against James Hardy and all persons claiming or who might claim an interest in the tract. The complaint alleges plaintiff's relation as receiver of the defunct bank and that as such receiver he is "the sole owner, in fee simple absolute," of the tract; that defendant James Hardy "has been in possession of the said premises and is now claiming possession thereof," but that his claim is without right and demands that he set forth the nature of his claim.

Answering the complaint, defendant Hardy denies plaintiff's allegation of title in him, and alleges that this defendant is the sole owner of the premises, in possession and entitled to possession thereof. He sets up the Brown mortgage and the assignment thereof to him; alleges that he is the owner, and has not parted with title, that the mortgage note has not been paid, and the mortgage is a valid and subsisting lien against the premises. He then deraigns title through McDonald.

By reply plaintiff joins issue as to the new matter alleged in the answer, and therein alleges that the Brown mortgage and note have been fully "paid and discharged," and that the "pretended" assignment thereof was taken by defendant with full knowledge of the payment and without consideration therefor. It is further alleged that "defendant at all times knew and now knows he has no valid claim to said note and mortgage and that the same constitutes a cloud on plaintiff's

title," and ought of right be canceled, discharged and satisfied of record.

As to the claim of title through McDonald, plaintiff alleges in his reply that the note and mortgage from W. A. Hardy to McDonald were, from the making thereof, "at all times void and fraudulent," executed, issued and placed of record with the intent and purpose on the part of both parties thereto, of cheating, defrauding, hindering and delaying the creditors of W. A. Hardy, and particularly the Yellowstone Bank & Trust Company, and that the defendant James Hardy, prior to the assignment to him of the sheriff's certificate of sale, knew and now knows that the assignment was without consideration, and at all times knew all of the circumstances surrounding the entire transaction between W. A. Hardy and McDonald and of the fraudulent purpose, and that defendant's acts were done in furtherance of the purpose of W. A. Hardy to defraud his creditors.

Further replying, plaintiff alleges that defendant James Hardy is barred and estopped from asserting any title or claim to the property by the judgment in the action brought by the plaintiff against McDonald by which "the note and mortgage now set up by the defendant James Hardy was determined and adjudicated to be released and discharged of record and the premises therein described were confirmed in this plaintiff. * * * That the said judgment is now *res adjudicata* as to * * * James Hardy."

Thus the pleadings present clear-cut issues which will later be discussed. The evidence in support of these issues is meager.

The plaintiff was sworn, but merely produced his sheriff's deed in evidence. Counsel for the plaintiff then introduced the judgment-rolls in *McDonald* v. *Hardy,* in which the McDonald mortgage was foreclosed, the property sold to McDonald and sheriff's certificate of sale issued, and in *Teisinger* v. *McDonald,* by which title was quieted in this plaintiff as against the McDonald mortgage. They then introduced a deed from

W. A. Hardy to A. B. Brown, conveying for the recited consideration of $8,000 certain lands in Iowa.

Brown was called as a witness for the plaintiff. He testified to the bona fides of his mortgage and his assignment thereof to James Hardy in consideration of a note; but, in explanation of the transaction, testified that he had no direct dealing with James Hardy; that on his demand for adjustment of his claims W. A. Hardy came to him in South Dakota, and, in settlement of all indebtedness owing from W. A. Hardy to him, he accepted the deed in evidence conveying to him the Iowa property; that W. A. Hardy tendered to him a note signed in blank by James Hardy, which was then filled in to cover the amount due, and, as a part of the settlement, demanded that he accept this note and assign it to W. A. Hardy. This he did, and thereupon assigned the W. A. Hardy note and mortgage to James Hardy, but he testified that he accepted the Iowa property in full settlement of his claims against W. A. Hardy. Thereupon the plaintiff rested.

James Hardy was thereupon sworn in his own behalf. He introduced his assignment from McDonald showing a recited consideration in excess of $13,000, and sheriff's deed based thereon. Defendant testified that he had been in possession of the property for three years, first as renter from McDonald, and, on receipt of the assignment, under it and later held possession under his deed. He further testified that he did not record his assignment when received, as he was then advised by counsel, naming the attorney, that it was not necessary; that thereafter he received McDonald's answer in the action of *Teisinger* v. *McDonald,* from McDonald in Iowa, with the request that he serve and file it; that he did so, paying the filing fee, for which he made demand upon McDonald. He further testified that he read "some of the answer." As to the Brown note and mortgage, the sum total of his testimony is that he is the owner and holder thereof, and that there have been no payments thereon except as indorsed upon the back.

Here the testimony ends; the matter was submitted to the court on tendered findings and briefs.

The plaintiff's position in the trial court is indicated by his request for findings, which go no further than to ask the court to find (a) that the Brown mortgage was fully paid at the time it was assigned to defendant, which assignment was made in the absence of defendant and without consideration; (b) that plaintiff obtained title to the premises by sheriff's deed, free from the lien of the Brown mortgage; (c) that defendant's assignment from McDonald was not recorded until after the decree in the case of *Teisinger* v. *McDonald* was entered; and (d) that that decree extinguished the McDonald title and consequently that of James Hardy as one claiming through McDonald.

In addition to making the findings requested, with the exception of (d), the court went clear beyond the theory of the plaintiff in its findings.

As to the Brown mortgage transaction, the court finds that W. A. Hardy and James Hardy "conspired together" to defraud the elder Hardy's creditors, and declares that the testimony of Brown and James Hardy "is to be viewed in the light of two persons engaged in a conspiracy to defraud a third; that their demeanor and manner of testifying were such that upon those portions of their testimony in which the fraud is called in question, and they are not supported by extraneous evidence, they are unworthy of belief, nor can any credence be given to their testimony upon those points."

In so far as the testimony of Brown is concerned, it must be remembered that he was called as a witness for the plaintiff to show that the Brown mortgage was fully paid prior to the assignment made to James Hardy; he but related what took place between himself and W. A. Hardy, in South Dakota, in the absence of James Hardy, and it is only by accepting his testimony as worthy of belief that the court can say that, under any circumstances, the plaintiff would be entitled to have his asserted title cleared of the lien of Brown's first mortgage.

As to James Hardy's connection with this transaction, the record is absolutely devoid of any showing that defendant

knew of the settlement by which the Brown mortgage was paid; he was not interrogated respecting the consideration he gave for the assignment. Wherein, then, does the evidence warrant the finding that this defendant "conspired" with W. A. Hardy in the transaction? There is some discussion in the briefs as to whether or not W. A. Hardy acted as agent for his son in securing the assignment, but we need not go into the matter. The evidence warrants a finding that the Brown mortgage was fully paid prior to the assignment, and the whole matter may be eliminated from consideration.

As to the McDonald transaction, the court made its finding that W. A. Hardy, James Hardy and A. W. McDonald "conspired together to defraud" this plaintiff in the original "giving of the McDonald note, in the foreclosure proceeding and in transferring the certificate of sale to James Hardy"; that James Hardy was cognizant of the issues involved in the action by this plaintiff against McDonald, "to-wit, that the transactions of W. A. Hardy and A. W. McDonald were fraudulent." The court then made findings that, as James Hardy was not a party to the action against McDonald, the judgment in that action did not adjudicate his claim of interest "as such," "but the court finds that, whether or not James Hardy was involved in the general scheme to defraud the creditors of W. A. Hardy is litigated and is in issue in the case at bar and * * * plaintiff has sustained that issue and that the transfer of the certificate of sale to James Hardy * * * was a part of the scheme to defraud the creditors of W. A. Hardy."

These findings are in line with certain of the allegations of the complaint, but nowhere in the meager evidence in this case is there a suggestion of proof that James Hardy had any knowledge of the original transaction between his father and A. W. McDonald or was in any manner connected with the foreclosure of the mortgage. It was not even shown that he lived with his father or so much as knew that his father was indebted to the defunct bank. The only evidence introduced to show that the transactions between W. A. Hardy

and McDonald were fraudulent is the judgment-roll in the case of *Teisinger* v. *McDonald*, wherein James Hardy was not made a party, and McDonald alleged that, at the time the action was commenced, he no longer held title to the property. Conceding for the moment that the judgment in that action might have the effect of evidence of the facts on which it is based (*Glass* v. *Basin & Bay State Min. Co.*, 35 Mont. 567, 572, 90 Pac. 753; however, see Greenleaf on Evidence, 16th ed., 666, secs. 538, 539), the facts so proved would not support the finding that this defendant was a party to the conspiracy, and, inasmuch as James Hardy made no statement relative to the alleged fraud, the court's declaration that his demeanor and manner of testifying were such as to render him unworthy of belief does not aid in supporting these findings.

Fraud must not only be alleged, but proved; it cannot be presumed, and a mere suspicion that a transaction is fraudulent is not sufficient to overturn it. (*Koopman* v. *Mansolf*, 51 Mont. 48, 149 Pac. 491; *Cuckovich* v. *Buckovich*, 82 Mont. 1, 264 Pac. 930.)

The court finds that James Hardy's participation in the fraud of W. A. Hardy and A. W. McDonald was an issue in this case, which is true, and then declares that "the plaintiff has sustained that issue." Where, in the judgment-roll in the *McDonald Case* and the testimony of James Hardy, which is all the evidence on the subject, is there justification for more than the barest suspicion that James Hardy participated in the fraud practiced by Hardy, senior, and McDonald, granting that their transactions were fraudulent? True, James Hardy stated that he read "some of the answer" in that action, but he was not questioned as to what part of the answer he read; if he read the paragraph quoted, he would have been able to draw the conclusion that, in that action, McDonald was charged with having conspired with W. A. Hardy to defraud the latter's creditors, but how and in what manner he would not have been advised; although he might have gathered that it was in connection with some land deal, he would not have been advised as to what land was involved,

and the court was not advised that he read those paragraphs from which he might have become so far cognizant of the issues in that case.

Plaintiff contends here, contrary to the finding of the court, that the judgment must be affirmed on the ground that the *Teisinger* v. *McDonald* judgment is *res adjudicata* and binding upon defendant Hardy. But it must be remembered that the action was commenced long after McDonald had parted with title or interest in the land—the subject matter of the action. James Hardy was, at the time the action was commenced, the holder of the sheriff's certificate of sale, and had then been entitled to sheriff's deed for some months; the period of redemption had expired and title vested in him. (*McQueeney* v. *Toomey*, 36 Mont. 282, 122 Am. St. Rep. 358, 13 Ann. Cas. 316, 92 Pac. 561; *Hamilton* v. *Hamilton*, 51 Mont. 509, 154 Pac. 717.)

A judgment is, "in respect to the matter directly adjudged, conclusive between the parties and their successors in interest by title subsequent to the commencement of the action or special proceeding, litigating for the same thing under the same title, and in the same capacity, provided they have notice, actual or constructive, of the pendency of the action." (Sec. 10558, Rev. Codes 1921.) In spite of this statutory declaration, plaintiff contends that the judgment here is conclusive against defendant Hardy, although he was not a party to the action nor a successor to such party "by title subsequent to the commencement of the action," as the action to quiet title was an action *in rem,* and therefore binding on all the world.

An action to quiet title, under section 9479, Revised Codes of 1921, in which all unknown claimants are made parties and served with process by publication (sec. 9482, Id.), is binding upon all such unknown or possible claimants (sec. 9488, Id.), but we have no such action here. This was merely an action *in personam* or *quasi in rem,* in which the judgment rendered was conclusive only on those parties mentioned in section 10558, above. (*Freeman* v. *Alderson,* 119 U. S. 185, 30 L. Ed. 372, 7 Sup. Ct. Rep. 165.)

Counsel next urge that James Hardy was bound by the ▪ judgment because of privity of contract with McDonald, under which assertion they argue privity of contract, title and judgment, and cite many authorities to the effect that such privies are bound by the judgment or estopped from asserting a right determined in an action wherein the party from whom they acquired title has suffered judgment voiding his right, including *In re Smith's Estate,* 60 Mont. 276, 199 Pac. 696, and 1 Greenleaf on Evidence, 16th ed., sec. 523.

While the authorities cited do not confine the rule stated, viz., that a judgment is conclusive not only upon those who were actual parties to the litigation, but also upon all persons who are in privity with them (2 Black on Judgments, sec. 549), to those persons who acquired a right or title after the commencement of the action in which the judgment was rendered, this is, probably, because the writers deemed such a statement unnecessary, for the reason that only such persons come within the designation of "privies."

Freeman in his work on Judgments declares that "it is well understood, though not usually stated in express terms in works on the subject, that no one is a privy to a judgment whose succession to the rights of property thereby affected occurred previously to the institution of the suit." (1 Freeman on Judgments, 4th ed., 162.)

The citation from Greenleaf must be read in connection with his further discussion of the subject of privies to the party to an action extending from the cited section up to and including section 536, which closes with the statement: "The same rule applies to all grantees, they being in like manner bound by a judgment concerning the same land, recovered by or against their grantor prior to the conveyance."

One is not a privy to a judgment where his succession to the rights of property thereby affected occurred previous to the institution of the suit (34 C. J. 1010–1013; *Dull* v. *Blackman,* 169 U. S. 243, 42 L. Ed. 733, 18 Sup. Ct. Rep. 333; *Schuler* v. *Ford,* 10 Ida. 739, 109 Am. St. Rep. 233, 3 Ann. Cas. 336, 80 Pac. 219, 221); this rule applies in the case of an assignee

of a right in property, where the right vested prior to the commencement of the action in which the judgment was procured, except as the rule has been changed by statute, or where the assignee has been notified to defend the action and has failed to do so (34 C. J. 1018). Neither of the exceptions last noted has application here.

There was no such privity of contract or judgment between James Hardy and McDonald as to bind this defendant by the McDonald judgment.

"No alienee, grantee, or assignee, is bound or affected by a judgment or decree, rendered in a suit commenced against the alienor, grantor, or assignor subsequent to the alienation, grant, or assignment; for the plain reason, that otherwise his rights of property could be divested without his consent, and the fraud or laches of the grantor could work a forfeiture of estates he had created by the most solemn conveyances." (*Coles* v. *Allen,* 64 Ala. 98, 106.)

It is true that, by the assignment of the certificate of sale, James Hardy acquired only the title held by McDonald, and took it subject to all equities (*Timms* v. *Shannon,* 19 Md. 296, 81 Am. Dec. 632; *York* v. *McNutt,* 16 Tex. 13, 67 Am. Dec. 607, and note), and therefore, on proof supporting the allegations of plaintiff's complaint with reference to the fraudulent character of McDonald's mortgage, plaintiff might have prevailed in this action; but reliance upon the judgment alone was not sufficient. "Whatever may be the force and effect of the judgment or decree against the grantor, if it is sought to be used to the prejudice of the grantee, there must be independent, distinct evidence of the facts which authorized its rendition." (*Shuler* v. *Ford,* above, and cases cited therein.)

The evidence does not justify the findings of the court in the case at bar with relation to fraud or estoppel, and the judgment must therefore be reversed.

Mr. Chief Justice Callaway and Associate Justices Galen, Ford and Angstman concur.