TEISINGER, Receiver, Respondent, *v.* HARDY, Appellant.

(No. 6,853.)

(Submitted October 13, 1931. Decided November 18, 1931.)

[5 Pac. (2d) 219.]

*Mr. C. E. Collett*, for Appellant, and *Mr. C. A. Spaulding*, of Counsel, submitted a brief; *Mr. Spaulding* argued the cause orally.

*Messrs. Hildebrand & Warren*, for Respondent, submitted a brief; *Mr. Raymond Hildebrand* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff brought this action to quiet title to certain described lands situated in Richland county, his complaint being in the usual form. James Hardy, son of W. A. Hardy, is the only defendant who appeared in the action and he will hereafter be referred to as the defendant. By answer he alleged that on May 24, 1921, W. A. Hardy was the owner of the lands in question and on that day he gave a mortgage on it to A. B. Brown to secure a note, and that Brown indorsed the note and assigned the mortgage to defendant on February 19, 1926; that he is now the owner and holder thereof and that the note is still unpaid and the mortgage still subsists as a lien on the property paramount to any claim of plaintiff thereto.

He also alleged that on November 9, 1922, W. A. Hardy executed and delivered to A. W. McDonald a note in the sum of $11,000 and a mortgage on the property securing it; that thereafter the McDonald mortgage was foreclosed, resulting in a decree of foreclosure on September 11, 1925, and a sheriff's certificate of sale to McDonald on October 17, 1925; that on March 3, 1926, McDonald, for value received, assigned the certificate of sale to defendant who received a sheriff's deed on July 15, 1927.

Plaintiff by his reply alleged that the Brown note secured by the mortgage has been fully paid and discharged and that the mortgage lien no longer exists; that the McDonald note and mortgage were executed by W. A. Hardy at a time when he was insolvent and for the purpose of hindering, delaying and defrauding his creditors and particularly the Yellowstone Valley Bank & Trust Company; that defendant, when he took the assignment, knew the facts and circumstances surrounding the transaction and that he paid no consideration for the assignment but took it in furtherance of the purpose of W. A. Hardy to hinder, cheat, delay and defraud his creditors.

The cause was tried to the court without a jury, the Honorable Robert C. Stong, Judge presiding. The court found that plaintiff is the sole owner in fee simple of the property, and in general found that the allegations of the reply were sustained by the evidence. Accordingly, judgment was entered for plaintiff, from which defendant appealed.

Plaintiff, as his source of title to the property, relied upon a sheriff's deed of February 14, 1927, resulting from a sale of the property under execution in an action brought by plaintiff against W. A. Hardy, wherein plaintiff obtained judgment on November 4, 1925. Brown, whose sister was married to W. A. Hardy's brother, testifying as a witness for plaintiff, gave substantially the same evidence as he did upon the former trial, which is succinctly set forth in the opinion in *Teisinger* v. *Hardy*, 86 Mont. 180, 282 Pac. 1050. He also testified that the reason why W. A. Hardy wanted the transaction handled as it was, as stated to him by W. A. Hardy, was because Teisinger had levied on his property and he wanted to keep the property out of his name and in his son's name.

On the former appeal we held the evidence was sufficient to warrant a finding that the Brown mortgage was fully paid prior to the assignment to defendant. This being so, the lien of the mortgage could not be kept alive by an assignment to defraud creditors. (27 C. J. 463.) Hence the finding by the trial court with respect to the Brown mortgage, being fully sustained by the evidence, will not be disturbed by us.

With respect to the McDonald mortgage defendant contends that the pleadings are not sufficient to present the issue of fraud and that there is not sufficient evidence to support a finding of fraud. He first argues that the allegations of the reply constitute a departure from the allegations of the complaint. The complaint alleges ownership of the property by plaintiff and his right of possession; that defendant claims some right which is alleged to be groundless and invalid. The complaint meets with the requirements prescribed in *Slette* v. *Review Pub. Co.*, 71 Mont. 518, 230 Pac. 580. The

answer, as above noted, in so far as it has application to the McDonald mortgage, alleged superior title in defendant by reason of the foreclosure and sheriff's deed. The reply in substance charges that the McDonald mortgage was given by W. A. Hardy to hinder, delay and defraud his creditors, and particularly the Yellowstone Valley Bank & Trust Company; that defendant knew this, and that he gave no consideration for the assignment of the sheriff's certificate of sale on which the sheriff's deed was based.

"The office of a reply is to join issue on or avoid new matter alleged in the answer; it cannot aid the complaint by supplying an omission broadening the scope or adding a new ground of relief." (*Fleming* v. *Consolidated Motor Sales Co.*, 74 Mont. 245, 240 Pac. 376.)

Does the reply here broaden the scope of the complaint or add a new ground of relief? It obviously does not. Until the defendant asserted his title, plaintiff was not advised of the nature of his claim or whether he would assert any claim, and was not obliged to anticipate what claim the defendant might rely upon. The reply simply seeks to defeat the title set up by defendant and is not a departure from the cause of action pleaded in the complaint. (*Schlageter* v. *Gude*, 30 Colo. 310, 70 Pac. 428; *Snyder* v. *Wheeler*, 81 Kan. 508, 106 Pac. 462; *Miner* v. *Morgan*, 83 Neb. 400, 119 N. W. 781; *Neve* v. *Allen*, 55 Kan. 638, 41 Pac. 966; *Whitehead* v. *Callahan*, 44 Colo. 396, 99 Pac. 57; *Platt* v. *Parker-Washington Co.*, 161 Mo. App. 663, 144 S. W. 143; *Barron* v. *Wright etc. Co.*, 292 Mo. 195, 237 S. W. 786.)

Defendant asserts that the reply is a departure from the complaint because plaintiff in his complaint relies upon a legal title, while in the reply he asserts an equitable one depending upon an equitable adjudication of the invalidity of defendant's title. This contention cannot be sustained. An action to quiet title is one in equity (*Dahlberg* v. *Lannen*, 84 Mont. 68, 274 Pac. 151), and "the court in which such action is tried shall have jurisdiction to make a complete adjudication of the title to the lands named in the complaint."

(Sec. 9487, Rev. Codes 1921; and see *Pollock M. & M. Co.* v. *Davenport*, 31 Mont. 452, 78 Pac. 768.)

When defendant asserts a legal title, plaintiff may by reply set up facts in avoidance of the title upon which a court of equity may grant equitable relief against it. (*School District No. 73* v. *Wrabeck*, 31 Minn. 77, 16 N. W. 493; *Whitehead* v. *Callahan*, supra), and by a parity of reasoning, plaintiff may assert a legal title in himself and avoid the title asserted by defendant on equitable grounds.

It is next contended by defendant that there is not a ▆ sufficient plea of fraud with respect to the title held by him, in that the charge of fraud relates to the mortgage and not to the foreclosure proceedings resulting in the sheriff's deed through which defendant claims title. On the former appeal we held that the pleadings "present clear-cut issues." In that case, as here, plaintiff introduced the judgment-roll in the case entitled *Teisinger* v. *McDonald*, wherein title was quieted in this plaintiff as against the McDonald mortgage. We held that, since this defendant was not a party to that action, the judgment was not binding as to him, but said: "On proof supporting the allegations of plaintiff's complaint with reference to the fraudulent character of McDonald's mortgage, plaintiff might have prevailed in this action; but reliance upon the judgment alone was not sufficient." This adjudication became the law of the case. (*Carlson* v. *Northern Pac. Ry. Co.*, 86 Mont. 78, 281 Pac. 913; *Anderson* v. *Border*, 87 Mont. 4, 285 Pac. 174.) And ▆ it is undoubtedly the correct rule. "Fraud cuts down everything. The law sets itself against fraud to the extent of breaking through almost every rule, sacrificing every maxim, getting rid of every ground of opposition. The law so abhors fraud that it will not allow technical difficulties of any kind to interfere to prevent the success of justice, right and truth." (*State ex rel. Sparrenberger* v. *District Court*, 66 Mont. 496, 33 A. L. R. 464, 214 Pac. 85.) And, as said in 27 C. J. 455, "transactions which the law mercilessly reprobates and brands will not be permitted to be successfully

shielded under the deceptive garb of apparently regular and sanctified judicial proceedings.''

In the case of *Teisinger* v. *McDonald*, a suit to quiet title, plaintiff attacked the judgment in the foreclosure action of *McDonald* v. *W. A. Hardy*, the certificate of sale and the sheriff's deed, as well as the mortgage, alleging that all of those proceedings were had for the purpose of defrauding the creditors of W. A. Hardy. The court in effect so found, for title was quieted in plaintiff. James Hardy was not made a party to those proceedings, and hence we held in 86 Mont. 180, 282 Pac. 1050, that the judgment in that action was not binding as to him. But so far as the proceedings in the foreclosure action were concerned, James Hardy, not being a party of record in that action, was not a necessary party to be joined to impeach the judgment of foreclosure. Notwithstanding the successful impeachment of that judgment by Teisinger, James Hardy, if he paid consideration for the assignment and had no notice of the fraudulent purpose of W. A. Hardy and A. W. McDonald, or if, in other words, he is an innocent purchaser, would still be the owner of the property by virtue of the sheriff's deed. But it is alleged here that he paid no consideration for the assignment of the certificate of sale on which the deed was issued, and that he knew of the fraudulent purpose of W. A. Hardy and A. W. McDonald in making the fraudulent mortgage. These allegations are sufficient to state a cause of action as against James Hardy where, as here, the judgment of foreclosure has already been successfully impeached as against the party who obtained it.

If the mortgage to McDonald was in fraud of the creditors of W. A. Hardy and James Hardy knew it, or if, as alleged, he paid no consideration for the assignment of the sheriff's certificate of sale emanating from the foreclosure proceedings, those proceedings, held fraudulent as against the parties of record therein, could not serve to spread over James Hardy a mantle of innocence. As to him, the judgment of fore-

closure has no more efficacy than the mortgage upon which it was based.

Other contentions of defendant regarding the insufficiency of the reply to present the issue of fraud have been considered by us and are found without merit.

This brings us to the final contention of defendant, that there is no proof of the allegations of fraud. In support of this contention defendant asserts that the assignment of the certificate of sale by McDonald to him must be viewed as one between strangers, and not as one between relatives, which we have held in *Ferrell* v. *Elling,* 84 Mont. 384, 276 Pac. 432, *Edenfield* v. *Seal Co.,* 83 Mont. 49, 270 Pac. 642, and *Fousek* v. *DeForest,* 90 Mont. 448, 4 Pac. (2d) 472, requires rigid scrutiny. This cannot be so where, as in this case, the evidence discloses the fraudulent purpose of W. A. Hardy and where the circumstances tend to show that he was using his son as an instrument to accomplish his purpose. The rule is that "a collusive and fraudulent execution or other judicial sale with intent to hinder, delay or defraud creditors of the execution debtor by covering up property in another's name or securing it or any part thereof to the debtor himself or his family, * * * will be set aside at the suit of his creditors." (27 C. J. 459.)

Here the record shows that defendant is the son of, and lived with, W. A. Hardy until the fall of 1925. The deposition of McDonald, introduced in evidence, shows that he had no interest in the note and mortgage given by W. A. Hardy to him; that the transaction was simply to cover up the property of W. A. Hardy and to prevent his creditors from levying on his property in Richland county; that he gave no consideration for the note and mortgage; that defendant and his father paid absolutely nothing to him for the assignment of the certificate of sale, and that defendant never at any time owed him any money, though in answer to a cross-interrogatory he admitted that he received a note from defendant as the consideration for the assignment. He said

he made the assignment so that he would be out of the transaction; that it was at the request of W. A. Hardy that he authorized an attorney to foreclose the mortgage and that he assigned the certificate of sale to defendant; that W. A. Hardy made the arrangements for the employment of an attorney for McDonald to institute foreclosure proceedings against himself and the attorney's fee came through W. A. Hardy.

There was evidence that about the time the mortgage here involved—to McDonald—was executed, W. A. Hardy also executed two mortgages to Isaac Littlefield, of Hopkinton, Iowa, where McDonald also resided, one securing an alleged indebtedness of $19,500 and the other of $20,000, and two to J. J. Kirkwood, of the same place, one in the sum of $35,000 and the other in the sum of $10,000, and one other to McDonald in the sum of $12,500, which covered property having a value of about $20,370, and against which there were prior mortgages aggregating in amount $25,200. Littlefield was interviewed by plaintiff, and plaintiff was advised by him that he knew nothing of the mortgages executed to him and voluntarily released them. Kirkwood died before plaintiff was able to interview him, but the administrator of his estate voluntarily released the mortgages given to Kirkwood. W. A. Hardy personally filed these mortgages of record in Richland county, together with the one here involved, and on the same day stated to plaintiff that he had done so, and that "he was going to show that damn bunch of collectors and bank receivers that he was through with them; that they would get nothing from him."

Plaintiff had a conversation with W. A. Hardy with respect to the collection of the notes due to the Yellowstone Valley Bank & Trust Company in the presence of defendant in March, 1923, in which plaintiff advised him that unless they were paid he would have to take the property, and plaintiff testified that W. A. Hardy then said, in substance, to take the property, that that was all they were going to get, that he had no money to pay the debt.

In the summer of 1925, in the presence of defendant, plaintiff informed W. A. Hardy that he was about to foreclose a chattel mortgage against him, and W. A. Hardy then said: "There it is, if you can find it all. There is some here you won't get. You can take what you can get." Later in the same summer, on the day of the sale under plaintiff's chattel mortgage foreclosure, plaintiff talked with W. A. Hardy in the presence of defendant, and W. A. Hardy then said: "There is some of your property that is not here. This is all you are going to get. Sell it, and you are through with it. You will never get another cent."

The record shows that at the time defendant took the assignment of the certificate of sale he was twenty-two years of age and owned about eight or ten head of horses and some machinery. When he was asked whether the horses were mortgaged he said, "I wouldn't doubt it," and he stated the machinery was "probably" mortgaged. He said he gave his unsecured note to McDonald in the sum of "$13,000 and something" for the assignment. He admitted reading a part of the answer of McDonald filed in the case of *Teisinger* v. *McDonald,* the case in which the McDonald mortgage was being attacked for fraud, and that he filed the answer in court for McDonald. Practically all of the negotiations culminating in the assignment of the Brown mortgage to defendant were conducted by his father with the knowledge of defendant.

That the mortgage of W. A. Hardy to McDonald and the judicial proceedings that followed were for the fraudulent purpose of hindering, delaying and cheating the creditors of W. A. Hardy, including this plaintiff, is overwhelmingly established by the evidence.

That defendant knew of the fraudulent purpose of his father, or knowingly participated therein, is not so clearly established by direct evidence. But in view of the conversations between plaintiff and W. A. Hardy, overheard by defendant, and in view of the information that an examination of the records would have revealed, showing the array of mortgages

placed of record by W. A. Hardy, it is clear that defendant had sufficient notice of the fraudulent character of the mortgage in question to put him upon inquiry, which, had it been pursued, would have led to actual knowledge. Had he but inquired of McDonald as to the bona fides of the mortgage, he would have ascertained that it was without consideration and that it was given to McDonald by W. A. Hardy to cover up the latter's property. This is sufficient to deprive him of the standing as a bona fide purchaser. (5 C. J. 975, sec. 165.)

In considering the sufficiency of the evidence to show defendant's participation in the fraud it must be remembered that this, like the fraud of the principal offender, cannot often be established by direct evidence. As was said in *Merchants' Bank* v. *Greenhood,* 16 Mont. 395, 41 Pac. 250: ''Fraud conceals itself. It does not move upon the surface in straight lines. It goes in devious ways. We may with difficulty know 'whence it cometh and whither it goeth.' It 'loveth darkness rather than light, because its deeds are evil.' It is rarely that we can lay our hand upon it in its going. We are more likely to discover it at its destination, before we know that it has started upon its sinuous course. When we so discover it, the search light of a judicial investigation goes back over its trail and lightens it from beginning to end. As the woodsman follows his game by slight indications, as a broken twig or a displaced pebble, so fraud may become apparent by innumerable circumstances, individually trivial, perhaps, but in their mass 'confirmation strong as proofs of holy writ.' The weight of isolated items tending to show fraud may be 'slight as the shadow of drifting snow,' but the drifting snow in time makes the drift, the avalanche, the glacier.''

The finding of the court that defendant knew the fraudulent character of the McDonald mortgage and the facts and circumstances showing the fraudulent purpose of his father, is sustained by substantial evidence, and we cannot say that the evidence preponderates against it. Notwithstanding McDonald's statement that the defendant never at any time

owed him any money, were we to assume that defendant paid value for the assignment by giving McDonald his note, his position would be no better in view of the notice and knowledge possessed by him, from which the fraudulent character of the mortgage could have been ascertained upon reasonable inquiry. (Sec. 8781, Rev. Codes 1921.)

The judgment is affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.