RYAN, RESPONDENT, v. BLOOM ET AL., APPELLANTS.

No. 8744

Submitted September 29, 1947. Decided November 14, 1947.

186 Pac. (2d) 879

Mr. S. P. Wilson, of Deer Lodge, for appellants.

Mr. Walter L. Pope and Mr. Russell E. Smith, both of Missoula, for respondent.

MR. JUSTICE CHOATE delivered the opinion of the Court.

This is an appeal by defendants Edward J. Bloom and Helen Bloom from a judgment of the district court of Granite county in favor of plaintiff in an action to quiet title to certain real property. The complaint is in the usual short form of quiet title suits against both known and unknown defendants, alleging ownership of the land in question by plaintiff and the assertion of adverse claims thereto by defendants.

Answering defendants have set up several defenses in which, briefly stated, they plead the following matters:

1. That on November 25, 1941, plaintiff had conveyed the land in question to defendant Edward J. Bloom by quitclaim deed regularly acknowledged and recorded, accompanied by a contemporaneous written contract between said parties, setting forth the conditions under which said deed was executed; that it was agreed that defendant Edward J. Bloom should cause a bucket-line dredge to be built and operated on said land and should carry on placer gold mining operations thereon. Plaintiff was to be paid $8,270 as the purchase price of said land. The payments were to be made from "ten percent of the production of gold from said land" but said payment should be $25 per month from the date of the agreement until January 1, 1944, and no less than $1,200 per year thereafter.

2. That the defendant Edward J. Bloom was inducted into the United States active naval service on February 28, 1942, and continued therein until February 10, 1945; that by reason of said service defendant was unable to carry on the mining operations and that under the Soldiers' and Sailors' Civil Re-

lief Act, 50 U. S. C. A. Appendix, sec. 501 et seq., plaintiff is barred from asserting cancellation of said contract for failure of performance while defendant was in the military service of the United States.

3. That in January, 1942, the United States war production board issued an executive order prohibiting the use of materials for the construction of a bucket-line gold dredge and later prohibited the operation of gold dredges, thus making it impossible for defendant Bloom to carry on placer gold mining operations in compliance with his contract with plaintiff.

4. That said defendant is now desirous of resuming performance of his contract with plaintiff and wishes to pay plaintiff what is due under said contract and that on September 10, 1945, he tendered the plaintiff $150 to apply on the purchase price of the land, which offer was rejected.

5. That plaintiff is not the real party in interest in this action because of the fact that after the execution of the deed and contract between palintiff and defendant Bloom, plaintiff assigned said contract to his daughter Katherine Simmons.

With the exception of formal matters, the reply raises issues on the allegations of the above defenses and alleges nonperformance by defendant Bloom of virtually all of the terms of the contract and deed of November 25, 1941, by him agreed to be performed. The reply further alleges that the deed and contract both executed on November 25, 1941, constituted only an option to purchase the land in question, the terms of which option were never complied with by defendant Edward J. Bloom; that the quitclaim deed given by plaintiff to Edward J. Bloom was executed with the understanding that it should not be recorded until the payments provided for in the contemporaneous agreement had been made but that said defendant recorded the deed in violation of that agreement. The court made findings of fact and conclusions of law in favor of plaintiff on all issues and entered a decree quieting title to the land in plaintiff.

On appeal to this court the presumption is that the findings

██ of the trial court and its judgment based thereon are correct, and they must be sustained when supported by substantial evidence. Demos v. Doepker, Mont., 182 Pac. (2d) 469, 473; State ex rel. Anderson v. Gile, Mont., 172 Pac. (2d) 583; Sanders v. Lucas, 111 Mont. 599, 111 Pac. (2d) 1041.

*Appellants' specifications of error.*

No. 1. As we understand this specification, in the light ██ of counsel's argument and his objections to the introduction of evidence, it is to the effect that the pleadings do not warrant the relief asked and that an action based upon section 8733, Revised Codes of Montana 1935, "would seem to present the claims urged by plaintiff" rather than the short form of quiet title suit under sections 9479-9487, under which this action is brought.

In Slette v. Review Publishing Co., 71 Mont. 518, 230 Pac. 580, we pointed out the difference between an action to quiet title under section 9479 and one to remove a cloud on title under section 8733. However we need not in this case consider whether or not palintiff *might* have proceeded against the answering defendants under section 8733. It is sufficient to say that plaintiff elected to proceed under sections 9479-9487 under which any cloud on plaintiff's title may be removed or any adverse claim whatsoever to plaintiff's land may be determined. We doubt whether the able counsel for appellants can have intended to assert that plaintiff's complaint does not state a cause of action for quieting title to real property under sections 9479-9487. The complaint is in the usual short form of actions to quiet title, the sufficiency of which we approved in Slette v. Review Publishing Co., supra, and cases cited therein, and in Teisinger v. Hardy, 91 Mont. 9, 5 Pac. (2d) 219.

No. 5. Defendants Bloom and wife contend that before the ██ commencement of this action plaintiff has assigned to Katherine Ryan Simmons, his daughter, all of his interest in the contract, plaintiff's exhibit 4, and the payments to be made under it. The assignment in question was in writing, de-

fendants' Exhibit A-1, and was attached to the contract. The assignment reads as follows:

"For value received and in consideration of love and affection, I do hereby assign the within real estate contract to my daughter Katherine Simmons of Missoula, Montana

December 1, 1941 George F. Ryan."

With respect to this assignment the following facts appear: Plaintiff testified that he told Mr. Bloom that "in case anything should happen to me, I would like to have him make the payment to my daughter, Katherine Simmons," who was in Missoula at the time. Plaintiff also stated his reason for the request to be the fact that his daughter was his only heir. Mrs. Simmons testified that she never saw the assignment until it was presented to her during the trial of the case; that she never, prior to the trial, had any knowledge of its existence and that she never received any payment on account of the contract or assignment and that she claimed no interest in the real property in question as long as her father was living. Defendant Bloom corroborated plaintiff's testimony in this regard. Bloom drew the assignment at Ryan's request and testified that Ryan told him that "He expected he might pass on and desired that the income from the property should be paid to his daughter if he did pass on." The assignment was never delivered to Katherine Simmons. It is clear from the foregoing testimony that the assignment in question was not intended to take effect in possession or enjoyment until the death of the assignor and that the assignor never made a delivery of the assignment to the assignee, his daughter. Under these facts the plaintiff is not barred thereby of his right to maintain his suit to quiet title to the property.

No. 6. Appellants contend that the Soldiers' and Sailors' Civil Relief Act constitutes a defense to this action, in view of the fact that defendant Edward J. Bloom served in the United States Navy during World War II. Defendants have not cited any specific provision of said Act in support of their contention but have left to this court the task of ascertaining

what provision if any of said Act is claimed to be applicable to the facts of this case. We have examined the Soldiers' and Sailors' Civil Relief Act, U. S. C. A. Title 50 Appendix, secs. 501-590, and we find no provision of said Act which might be claimed to be applicable to this case unless it be the provisions of subdivision (1) of section 531 (1), Title 50 U. S. C. A. Appendix as amended by the Act of 1942 relating to relief under rental agreements, installment contracts, mortgages, etc. That section however, in so far as the facts of this case are concerned, provides relief for those in the military service who have paid a deposit or installment payment under a contract for the purchase of real estate. Assuming for present purposes that Edward J. Bloom's contract was one for the purchase of land, it is plainly apparent that he never paid any of the installments due on said contract and that he is not therefore within any of the classes of persons enumerated in section 531, supra.

Defendants further assert that the provisions of the United States war production limitation order, L-208, prohibiting the operation of gold dredges and other placer mining operations, made it impossible for defendant Edward J. Bloom to carry out the provisions of his contract with plaintiff, thereby precluding the maintenanec of this action.

The first of these limitation orders was issued October 8, 1942. Defendant Edward J. Bloom had been in default on his contract with plaintiff for some ten months prior to that time and he cannot plead the W. P. B. limitation orders in excuse of his default prior to the time they were promulgated. Neither did the W. P. B. limitation orders after they were issued necessarily prevent Bloom from making the $25 monthly payments or from paying the taxes or fixing the bridge on said land. We think appellants' contention in this respect is without merit.

Specifications 2, 3, 4, 7, 8, 9, and 10. These assignments are grouped and discussed together in appellants' brief. They raise the controlling question presented on this appeal, namely, the effect of the execution and delivery of the quitclaim deed, plaintiff's exhibit 5 and the contemporaneous contract between

plaintiff and defendant Edward J. Bloom, plaintiff's exhibit 4, upon plaintiff's right to maintain this action.

Appellants brief puts the controlling question as follows: "The decision in this case may be based entirely upon the construction of the writings entered into between the parties." The writings in question consisted of a quitclaim deed and a written contract both bearing the same date. November 25, 1941, both having reference to the same subject matter and executed contemporaneously. The deed, plaintiff's exhibit 5, was executed by plaintiff Ryan to defendant Edward J. Bloom. It conveyed the lands involved in this action and it recited a consideration of $8,270 "to be in hand paid" by the grantee. The deed recited that the grantee should also let a contract for the construction of a bucket-line dredge by January 1, 1944, and should pay the grantor $8,270 from ten percent. of the production of gold and not less than $1,200 annually after January 1, 1944. It is apparent that on the presumption that plaintiff was even slightly versed in business matters and that he "takes ordinary care of his own concerns" (sec. 10606, Rev. Codes), there must have been some sort of agreement supplementing the above deed. Nobody ordinarily careful of his own concerns would execute and deliver a deed for $8,000 worth of land on the sole promise of the grantee to pay that sum for it out of ten percent. of the production of the gold from it to be recovered by a bucket-line dredge to be built by the grantee two years later. There was in fact such a supplemental agreement. It appears as the contract between plaintiff and defendant Bloom, plaintiff's exhibit 4, and on the record presented there can be no doubt but that it was in fact an agreement supplementing the above deed to which it expressly refers. This instrument was drawn by defendant Edward J. Bloom, who by his own declaration is an attorney-at-law, and a specialist in mining law and mining contracts. Plaintiff testified that he executed the deed to Bloom on the latter's agreement that the instrument would not be recorded until the payments men-

tioned in said written contract had been made but that Bloom recorded said deed in violation of his agreement. The trial court so found and we fully concur in its finding. The written contract, after reciting the desire of the grantor to sell his land and the willingness of the grantee to purchase same ''only if valuable for gold dredging,'' and after referring to the deed between the grantor and grantee of even date therewith, proceeded to recite that the grantor ''shall be under the following obligations only'' with respect to the payment of $8,270 as the purchase price of said land:

''1. Such payments may be made from 10% of the production of gold from said ranches, but grantee shall pay to grantor not less than $1,200, per year on account of said purchase price after January 1944; until said $1,200 is paid $25 monthly to be paid.

''2. Grantee shall pay the taxes on said ground.

''3. Grantor may make use of the farm land for agricultural purposes, and remove wood prior to dredging if he desires.

''4. Grantee shall fix the bridge leading to one of the ranches, so as to make it passable.

''5. Grantee represents that grantor is under no obligation to Roy Handley, and is therefor entitled to make this agreement.

''6. That grantee may upon payment of $10 as agreed and liquidated damages, quit-claim the premises to grantor, and thereupon all obligation of grantor to grantee to pay the purcase price, or otherwise perform this agreement, shall be terminated.''

The true nature of the agreement made by the parties to this action sufficiently appears from the foregoing contract. Defendant Edward J. Bloom was willing to buy plaintiff's ranches only if valuable for gold dredging. All his agreements to pay $8,270 for the land, construct a bucket-line dredge, repair the bridge, etc., were ''watered down'' to a mere option to purchase by the language of the sixth proviso of the contract above quoted to the effect that grantee might pay $10, quit-

452

claim the premises to the grantor and be thereafter rid of all further obligation to pay the purchase price or otherwise perform the terms of his agreement. That the contemporaneous deed and contract between the . parties upon the same date and concerning the same subject matter, constituted a single transaction and must be construed together, is plainly apparent from the foregoing facts and the law applicable thereto. Section 7533 of our Code reads as follows: ''Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together.'' See also Bartels v. Davis, 34 Mont. 285, 85 Pac. 1027; Smith v. Hoffman, 56 Mont. 299, 184 Pac. 842, applying the above statute in cases involving facts analogous to those here considered.

On the facts shown in the record it is clear that the deed and contract created only an *option* and the rights of the defendant Edward J. Bloom are those only of an option holder who has failed to exercise his option within the period of its duration and in accordance with its terms. An option and its effect are defined in 55 Am. Jur., page 492, section 27, as follows: ''An option to purchase real property may be defined as a contract by which an owner of real property agrees with another person that the latter shall have the privilege of buying the property at a specified price within a specified time, or within a reasonable time in the future, and which imposes no obligation to purchase upon the person to whom it is given. Until the holder or owner of an option for the purchase of property exercises it, he has nothing but a mere right to acquire an interest, and has neither the ownership of nor any interest in the property itself.''

In Ide v. Leiser, 10 Mont. 5, 24 Pac. 695, 24 Am. St. Rep. 17, this court distinguished between a sale, an agreement to sell, and an option and pointed out that an option was neither a sale nor an agreement to sell but was simply a contract by which the owner of property agrees with another person that the

latter shall have the right to buy the property at a fixed price within a certain time.

In the case of Snider v. Yarbrough, 43 Mont. 203, 115 Pac. 411, which involved a contract relating to mining claims in which there was an obligation to sell but no obligation to buy, we held the instrument to be an option.

Thomas v. Standard Development Co., 70 Mont. 156, 224 Pac. 870, involved an oil and gas lease which contained a surrender clause almost identical with the one in the case at bar except that the amount to be paid on surrendering the contract was $1 instead of $10. We held its provisions created an option.

Discussing the effect of a failure to pay the money specified in an option, the Supreme Court of the United States, in Richardson v. Hardwick, 106 U. S. 252, 1 S. Ct. 213, 27 L. Ed. 145, held that where one has by contract the privilege or option of buying an interest in lands by paying a certain sum within a limited time, the contract itself does not vest him with any interest or estate in the lands and by his failure to pay the money or any part of it within the time limited, the privilege accorded him by the contract is at an end, and his rights under it cease.

Time is of the essence of an option contract, particularly when the instrument involves a lease on oil, gas 'or other mining property. We so held in Thomas v. Standard Development Co., supra, in an opinion which cites with approval Snider v. Yarbrough, supra. Since defendant Edward J. Bloom had only an option to purchase plaintiff's land and since time was of the essence of said agreement, his failure to exercise the option in acordance with its terms divested him of his rights.

That he had made such default appears abundantly from the record. Said defendant never let a contract for the construction of a bucket-line dredge; he never fixed the bridge; he paid only one or two years' taxes and he never made any payment on his contract. Said contract was dated November 25, 1941, and he entered the Navy in February, 1942, at which time

454

he was at least three months in default on his payments. On this record we hold that defendant Edward J. Bloom is not and was not at the time of the institution of this action the owner of the lands involved herein and his failure to exercise his purchase option has divested him of all interest in said lands.

In the case of Clark v. American D. & M. Co., 28 Mont. 468, 72 Pac. 978, we held that under an option contract, the failure of the purchaser to perform within the time stated, divests him of his rights. This decision was affirmed in the later case of Merk v. Bowery Min. Co., 31 Mont. 298, 311, 78 Pac. 519.

We find no merit in appellant's other contentions. The judgment of the lower court is accordingly affirmed.

Mr. Chief Justices Adair, and Associate Justices Angstman and Metcalf concur. Mr. Justice Gibson not participating.

Rehearing denied December 8, 1947.

Certiorari to United States Supreme Court denied April 19, 1948.